## BRISCOE v. YOUNG.

### (Filed December 2, 1902.)

1. WATER AND WATERCOURSES—*Diversion—Damages.*

Where a person diverts water from a stream by cutting a channel from it, and at a point lower down the stream turns it back into the old channel, and by its own momentum it is carried on to the lands of an adjoining owner, he is liable for damages.

2. EVIDENCE—*Waters and Watercourses—Diversion—Damages.*

In an action for damages to land from diversion of water, it is competent to show the difference in value of land before and after the injury.

ACTION by Alice Briscoe and others against N. Young, heard by Judge *F. D. Winston* and a jury, at June (Special) Term, 1902, of the Superior Court of RUTHERFORD County. From a judgment for the plaintiffs, the defendant appealed.

No counsel for the plaintiffs.
*S. Gallert,* and *Busbee & Busbee,* for the defendant.

DOUGLAS, J. We are compelled to say that we find great difficulty in understanding this case from the pleadings and the evidence. The map that was used on the trial below has not been sent up. Whether it would have enlightened us or not, we do not know.

Here, and below, the defendant demurred *ore tenus* to the complaint, as not setting forth a cause of action.    Although some parts of the complaint are somewhat unintelligible, we think that, as a whole, it does state facts constituting a cause of action, and perhaps more than one.    Section 4 of the complaint is as follows:

"That the defendant, in the early part of the year 1901, negligently and wrongfully proceeded to cut a canal, from one-fourth to one-half mile in length, commencing at a point about .... yards above where plaintiffs' and defendant's lands join, and emptying into the old channel of the creek at a point about ..... yards below the upper line of plaintiffs' land, and, by reason of said canal, did wrongfully divert the water from plaintiffs' land, and did cause the old channel or creek run to fill up with mud, sand, brush and other obstructions, and did thereby greatly damage the plaintiff's land by sobbing and rendering totally unfit for cultivation some 20 or 25 acres of the most productive part of the plaintiff's bottom land."

We do not see how diverting water *from* a man's land would tend to flood it, nor how such diversion would fill up the old channel with mud, sand and brush.    How did the sand and brush get there, if there was no water to carry them? Such a condition would more likely be the result of a freshet, for which the defendant might not be responsible.    We must bear in mind that the defendant is responsible only for the damages resulting from his unlawful diversion of water, and not for such as are caused by a freshet or other circumstances beyond his control, except to the extent to which his unlawful act may have contributed thereto.    The clearing up of our lands is constantly increasing the number and violence of freshets in two ways: By permitting the water to run off the land more rapidly, and by filling up the stream with sand. Occasionally, freshets are so great as to cover the entire bot-

tom lands, and under such circumstances ditches, whether lawful or unlawful, add nothing to the result. In fact, they are usually filled up unless their direction and fall are such as to enable them to clean themselves with the receding waters.

Water may be diverted in two ways which are somewhat different in their results and in the legal principles by which they are governed. The first, which has been more frequently before this Court, is where a ridge or natural watershed has been cut through so as to change the entire direction of the waters beyond, and bring them where nature never intended them to go. *Mullen v. Canal Co.,* 130 N. C., 496, and cases therein cited. The other form of diversion is where the current of the stream is changed without turning into it any waters that would not naturally have gone there. Where both the natural and the artificial channels are on the defendant's own land, we do not see how he would be liable. *Mizell v. McGowan,* 129 N. C., 93; 85 Am. St. Rep., 705.

But where the natural channel is the boundary line between adjacent proprietors, different questions arise, some of which are not necessarily involved in this case.

If, under the circumstances, the defendant cut the new channel into the old at a right angle, so that the water would be carried by its own momentum across the channel and onto the plaintiff's land, he would be liable for the resulting damage. If the cutting of the new channel did in fact cause the obstruction of the old, and the defendant turned the water back into the old channel without removing such obstructions, we see no reason why he should not be liable for the damage resulting from his own neglect. We think such facts are sufficiently alleged in the complaint, and that there was evidence tending to sustain them. The demurrer to the complaint and the motions to nonsuit were properly refused.

The exceptions to the evidence can not be sustained. There is no reason why the witnesses should not testify to the dif-

ference in value of the land before and after the injury. The difference in productiveness is merely one of the elements affecting its value.

There is an exception to the introduction of a letter from G. C. Briscoe to Young, but as neither the letter nor its essential purport appears in record, we are unable to say there was error.

Nearly all the defendant's special prayers were given, and there is nothing in his Honor's charge to which he can rightfully except. As we see no error in the trial of the action, the judgment is

Affirmed.