## PINNIX v. CANAL CO.

(Filed March 10, 1903.)

1. NEGLIGENCE—*Evidence— Canals.*

> Under the evidence in this case the trial court properly instructed that if the jury believed the evidence they should find that the defendant canal company negligently injured the property of the plaintiff.

2. DAMAGES—*Permanent Damages—Issues.*

> In an action for injuries to property, where no exception is taken and no additional issues are tendered, there is no impropriety in including all forms of injury in a single issue as to permanent damages.

3. NEGLIGENCE—*Damages—Canals*

> A canal company is liable for unlawfully damaging the lands of an adjacent landowner, even though such work is not negligently done.

4. CORPORATIONS—*Franchises—Canals.*

> A corporation can not justify an unwarranted act by a reference to a charter granted to its predecessor, irrevocable without the consent of the State, where the record does not show that the State has ever consented to a transfer from such an alleged predecessor.

ACTION by H. C. Pinnix and others, against the Lake Drummond Canal and Water Company, heard by Judge *Frederick Moore* and a jury, at September Term, 1902, of the Superior Court of CAMDEN County. From a judgment for the plaintiffs, the defendant appealed.

*E. F. Aydlett,* and *Williams & Leigh,* for the plaintiffs.

*Pruden & Pruden,* and *Shepherd & Shepherd,* for the defendant.

DOUGLAS, J.    This is an action to recover damages for alleged injury to the plaintiff's land by the defendant throwing mud, sand and water thereon, and further flooding it by filling up the sweat and lead ditch which was necessary for its proper drainage.

This is one of a series of cases arising out of injuries inflicted upon abutting land owners by the defendant in deepening and widening its canal in 1898 and 1899.    It is identical in principle and practically so in its essential facts with the cases of *Mullen v. Canal Co.,* 130 N. C., 496; *Ferebee v. Canal Co.,* 130 N. C., 745, and *Williams v. Canal Co.,* 130 N. C., 746.    It is "on all fours" with the latter case. In fact they are twin cases against the same defendants, arising out of the same work, involving similar injuries and resulting in damage of the same nature.    They must therefore be governed by the same legal principles.    The sweat and lead ditch was filled up, whereby the plaintiff's land was flooded, and large amounts of mud and sand were thrown in some places directly on the plaintiff's land, and in others, on the banks of the canal whence it was permitted to flow upon said land.    The land was permanently flooded, the shrubbery killed and the houses injured.    One of the defendant's own witnesses testified on cross examination that "sand and mud were piled up so high in front of one of the tenant houses that a cart wheel would have knocked the shingles off the porch; it was piled eight or ten feet high; that the plaintiffs planked up the porch to keep the sand out, and that sand went into the porch."    There was other evidence of the same nature.    As there was no substantial conflict in the testimony except as to the amount of damage, we see no error

in his Honor's charging the jury that if they *believed* the evidence they should answer the first issue yes.

The issue was as follows: "Did the defendant company negligently and wrongfully damage and injure the plaintiff's property as alleged in the complaint?" Answered, "yes." The second issue was the amount of permanent damages. There was no exception to the issue, and no additional issues were tendered. As it was agreeable to the parties, we see no reason to object to the inclusion of all forms of injury arising from the same work under the same issue.

The defendant contends that it is not liable unless the work was done negligently; but one is just as liable for doing an unlawful act as for negligently doing a lawful act, and of both there was ample evidence. Piling large quantities of mud and sand upon the banks of the canal, without providing means to prevent its flowing upon the plaintiff's land, was negligence; while throwing mud and sand directly upon the plaintiff's land was an unlawful act, which no amount of skill could justify. When a man's house is blocked up by a pile of mud ten feet high, the mere fact that the mud was skillfully piled helps neither his damaged building nor his wounded feelings. A man may lawfully pull down his chimney and pile the brick on top of his house, but he must pile them so that they will remain there. He cannot lawfully throw them together so carelessly that they fall off and injure some one passing in the street below. Still less could he throw them directly into the street regardless of injury to others.

The defendant contends in argument that it was organized under a public Act of which this court will take judicial notice, and by which its easement will be shown. It says further in its brief: "This canal, of which it is said that Gen'l Washington was a chief promoter, is a matter of public history in North Carolina, and does not derive its corporate

existence by an ordinary charter. It will appear from section 19 (page 225, 2nd Rev. Stats.) that it was the result of a *compact* between two sovereign States concerning a great inter-State public improvement, and which the two States declared should be a 'public highway' (section 9 p. 221) between the two States." If these concurrent charters are public laws entitled to judicial notice, which we doubt, they cannot avail the defendant. The complaint alleges that the defendant is a corporation organized under the laws of Virginia, and this is admitted in the answer. It is true the complaint further says that the defendant owns the canal property formerly known as the "Dismal Swamp Canal," but there is no allegation in either pleading connecting the defendant with the franchises granted to the Dismal Swamp Canal Co. by the inter-state compact of 1790, or those granted to the North West River Co. by the concurrent acts or compact of 1825. By express stipulation, these compacts were irrevocable without the consent of both States, and it does not appear that the State of North Carolina has ever consented to the transfer of such franchises to a purely Virginia corporation, such as the "Lake Drummond Canal & Water Company," the defendant in this action, appears to be. However if we go back to the Act of 1790 and 1792, we find nothing tending to show the extent of the right-of-way actually obtained by the defendant or its predecessor. Section 10 of the Act of 1790 provides that the Dismal Swamp Canal Co. *may,* on failure to agree with the owner of the land, condemn a right of way *"not exceeding* the width of three hundred feet." We have no evidence whatever, in or out of the record, tending to show what amount of land was actually condemned, if any. Hence, we can only repeat what we said in *Mullen v. Canal Co.,* 130 N. C., 496, 500: "It does not appear when or how the original right-of-way was acquired by the defendant, nor what was its extent. Under the cir-

cumstances, we must presume that it was a mere easement, and that it was limited to the extent of its use prior to the widening of the canal in 1898." The statutory right to acquire a right-of-way is no proof whatever of its subsequent acquisition, any more than a statute authorizing the entry of certain lands would be proof of subsequent entry and payment. The judgment of the court below is affirmed.

Affirmed.