MULLEN v. LAKE DRUMMOND CANAL AND WATER COMPANY.

(Filed June 13, 1902.)

1. EMINENT DOMAIN—*Damages—Canals.*

In condemnation proceedings for a canal no damages are contemplated except such as necessarily arise in the proper construction of the work.

2. NEGLIGENCE—*Damages—Evidence—Sufficiency—Canals.*

The evidence in this case is sufficient to show negligence on the part of the canal company in damaging the lands of the plaintiff by widening the canal and thereby filling up ditches leading from land of plaintiff.

3. DAMAGES—*Permanent—Acts 1895, Chap. 224—Canals.*

Permanent damages may be awarded a land owner along a canal if he is injured by the widening of the canal.

ACTION by F. N. Mullen against the Lake Drummond Canal and Water Company, heard by Judge *O. H. Allen* and a jury, at March Term, 1901, of the Superior Court of CAMDEN County.

This is an action for damages to plaintiff's land by the discharge thereon of diverted water and the obstruction of a ditch by which it had been previously drained. The defendant owns and operates what is known as the Dismal Swamp Canal, between the Pasquotank River in North Carolina, and Elizabeth River, in Virginia. The plaintiff owns the land in question, which is situated in Camden County, adjacent to and bordering on said canal for about three-quarters of a mile. The water in said canal was artificially brought

and maintained therein by locks and banks at an elevation several feet higher than the surrounding land. The banks of the canal not being sufficient to prevent the water from leaking through them and running upon the lands of adjacent owners, the defendant had constructed and maintained, prior to 1898, ditches parallel with its canal, and adjacent thereto, to catch and carry off the water percolating through its banks or falling thereon. These were called "sweat ditches," and emptied into a natural watercourse known as Joyce's Creek. The ditch adjacent to the plaintiff's land was also the "lead ditch" to his farm, being the only practical outlet for the drainage of about 135 acres of his land. In 1898 and 1899 the defendant widened and deepened its canal, and raised its banks and the water therein. In doing so, it threw large quantities of mud and sand into the sweat and lead ditch, whereby it was obstructed to such an extent as to flood and injure the plaintiff's land. The complaint is as follows:

"The plaintiff, complaining of the defendant, alleges:

"1. That he is a resident of Camden County, State of North Carolina.

"2. That the defendant is a corporation duly incorporated under the laws of the State of Virginia, as he is informed and believes, and operating a canal business in the State of Virginia and the State of North Carolina, and it owns what is known as the canal property, formerly known as the Dismal Swamp Canal, which runs from Elizabeth River, State of Virginia, to Pasquotank River, State of North Carolina, by way of Deep Creek and South Mills.

"3. That the defendant, during 1898, made a change in the width of this canal, and in doing so filled up what is known as the sweat ditch to the canal, and also the lead ditch of this plaintiff, leading from his farm, hereinafter described, to the creek, being the only practical way by which he can drain said farm.

"4. That the plaintiff is the owner of and in possession of that certain tract of land known as the "Old Tract," containing two hundred and fifty acres, more or less, and being a part of the Old Farm.   That the plaintiff is now in possession of the adjoining lands of the Isaac Burnham heirs, Mrs. H. C. Pinnix, Wm. Eason, S. O. Mullen main road, and others.

"5. That the defendant, its agents and employees and contractors, negligently and carelessly threw dirt and water in the lead ditch aforesaid, draining said farm, and threw water and mud upon the lands of said farm, and in this manner seriously damaged both the crops upon said lands and the lands themselves.

"6. That by said unlawful conduct the defendant caused the lead ditch to be insufficient to carry off the water from said lands, and banked the water and forced it back upon the farm, and in this manner drowned and seriously injured and destroyed the crops growing upon said lands during the years 1898 and 1899.

"7. That said unlawful conduct of the defendant not only damaged the crops, but, by forcing the water back upon the lands and ponding same upon the lands, has seriously and greatly damaged said lands, causing the water to lie upon same and the lands to sour and seriously injure its yielding power and greatly damage same.

"8. That it was the duty of said canal company to keep said sweat ditch cleared out and of sufficient capacity to carry off all the water, and it was their duty to protect same against the carelessness and wrongdoings committed by its agents and employees, as aforesaid.

"9. By reason of said unlawful and negligent acts and doings of the defendant, the plaintiff has been damaged in the sum of $900, according to his best judgment and belief. Wherefore," etc.

The defendant, answering the complaint, says:

"1. That section 1 thereof is true.

"2. That section 2 thereof is true.

"3. That section 3 thereof is untrue.

"4. That he has no knowledge or information sufficient to form a belief as to the matters and things in section 4 thereof, and therefore denies the same.

"5. That section 5 thereof is untrue.

"6. That section 6 thereof is untrue.

"7. That section 7 thereof is untrue.

"8. That section 8 thereof is untrue.

"9. That section 9 thereof is untrue.

"Wherefore, defendant demands judgment that he go without day and recover his costs."

The issues submitted and answers thereto were as follows: "1. Did the defendant wrongfully and negligently damage the lands and crops of the plaintiff as alleged? 'Yes.' 2. What permanent damage has the plaintiff sustained to his lands? '$100.' 3. What damage has he sustained annually to his crops for 1899 and for 1900? '1899, $353.50; 1900, $226.75.' " From a judgment for the plaintiff, the defendant appealed.

*E. F. Aydlett,* and *P. H. Williams,* for the plaintiff.

*Shepherd & Shepherd,* and *Pruden & Pruden,* for the defendant.

DOUGLAS, J., after stating the facts. This case has given us much trouble, and has been most carefully considered, not on account of its intrinsic value to the parties, but from the great importance and wide application of its underlying principles. There are some things that we do not clearly understand, and yet we must decide the case as it is presented to us, as was recently said in *Trimmer v. Gorman,* 129 N. C., 161. It seems strange that the damage to the crop should amount

to $353 for the year 1899 and to $226 for the year 1900, while the *permanent* damage to the land is only one hundred dollars; and yet the jury have so found under proper instructions and upon substantial evidence. There are some expensive crops of much greater value than the land on which they are raised.

It does not appear when or how the original right-of-way was acquired by the defendant, nor what was its extent. Under the circumstances, we must presume that it was a mere easement, and that it was limited to the extent of its use prior to the widening of the canal in 1898. We do not mean to say that there is any presumption of a right-of-way in a foreign corporation as such, but that the existence of the right being practically admitted, the presumption arises as to its extent.

The defendant introduced no testimony, but objected to nearly everything that was said or done, except the issues, and at the close of the evidence made the usual motions for nonsuit and direction of the verdict. These were properly refused, as there was ample evidence to go to the jury.

The ditch in question appears to have been constructed by the defendant at some past time, adjoining and parallel to its canal, for the purpose of catching and carrying the "sweat," or water percolating through the banks of the canal, and also as an outlet for the surface water dammed up by the construction of the canal. This ditch seems to have accomplished its double purpose until the year 1898, when the defendant deepened and widened its canal, and in so doing threw mud and sand into the ditch to such an extent as to practically obstruct the flow of water.

Among other things, the plaintiff testified "that he cut part of the ditch in June, 1900, at a cost to him of $50; that he did not complete it; that it would cost $200 to cut the whole ditch; that if he had cut the whole ditch it would not

have stood, as every big rain would wash the sand and mud in it and fill it up, which was piled on the banks by the defendant; that the only way to keep a ditch there, since the defendant has piled up the mud and sand on the bank, would be to log it, and that he did not know what it would cost to do so." The plaintiff was referring to cleaning out the old ditch, and by "logging," we presume he meant building a wall of logs against and as high as the embankment of the canal. This would evidently have been a work of considerable magnitude and expense, as the canal bounded the plaintiff's land for three-quarters of a mile; and its necessity was probably the foundation for the issue of permanent damages, which was submitted without objection. Such an issue is, in effect, a statutory condemnation of the additional easement, and can not be demanded by either party where the injury can be remedied at reasonable expense without interfering with the operation of the defendant company in the performance of its public duties. *Lassiter (Wm. J.) v. Railroad,* 126 N. C., 509; *Railroad v. Wicker,* 74 N. C., 220. Where the issue is submitted by consent, it is equivalent to a grant of the easement, the value of which alone remains to be determined by the jury.

Two important questions are presented to us: 1. Has the plaintiff been injured by the legal negligence of the defendant? 2. If so, were such damages included in the original condemnation of the defendant's right-of-way? In the present case the plaintiff occupies the singular position of being the upper and lower landowner by virtue of the same piece of land. The canal is constructed across the lower end of the plaintiff's farm, thus damming up the natural outlet for his surface-water; while the canal itself is so much higher than the surrounding land as to cause its percolating waters to run down upon the defendant. It appears that the water soaking through the banks of the canal was brought there by artificial-

means.  This is diversion, and it is now well settled that "neither a corporation nor an individual can divert water from its natural course so as to damage another. *They may increase and accelerate, but not divert." Hocutt v. Railroad,* 124 N. C., 214; *Mizzell v. McGowan,* 125 N. C., 439, and the same case, 129 N. C., 93; *Lassiter v. Railroad,* 126 N. C., 509.  That a lower owner can not obstruct a natural waterway so as to flood the lands above him has long been settled. *Pugh v. Wheeler,* 19 N. C., 50; *Overton v. Sawyer,* 46 N. C., 308; *Cagle v. Parker,* 97 N. C., 271; *Ridley v. Railroad,* 118 N. C., 996; *Railroad v. Wicker,* 74 N. C., 220; *Porter v. Durham,* 74 N. C., 767.

The extent of the defendant's right-of-way, and how and when acquired, does not appear; nor is it clear whether the ditch is on the land of the plaintiff or defendant; but the presumption of an easement carries with it the counter-presumption that the fee of the land is in the plaintiff.  The plaintiff testified that it was dug by the defendant, but that "said ditch was also the *lead* ditch and the only means or way of draining about 135 acres of his land."  Thus it would appear either that the ditch is in the same place as the old waterway, or that the waterway running in the same general direction was closed up by the construction of the canal and the ditch substituted therefor.  In either . event, the ditch would be considered as the waterway, the obstruction of which would render the defendant liable for the resulting injury. We are now treating the ditch as the "lead" ditch of the plaintiff, a service it rendered in addition to being the "sweat" ditch of the defendant.  Considered in its latter character, the negligence of the defendant was not so much in stopping up the ditch, as in its failure to perform the positive duty resting upon it of taking care of its own percolating waters.

In the case at bar, it appears that the defendant owed the duty to the plaintiff in respect to the ditch in consequence of

its closing the original waterway, and hence it does not come within the doctrine discussed in *Porter v. Armstrong,* at this term.

At times different principles come so near together in their practical application that it is almost as important to state what the Court does not decide as what it does decide.    The issues made no distinction as to the damage resulting from the ponding back of surface-water and the flooding by percolating waters; and as there was no exception to the issues and no tender of additional issues, we presume the defendant was content to regard them as on an equal footing.

We deem it better to discuss the general principles applicable to the facts of this case than to consider separately the twenty-three exceptions filed by the defendant.

The defenses relied on are practically the following: 1. That the damages recovered were contemplated in the original condemnation of the right-of-way.    2. That there is no evidence of negligence in the widening of the canal in 1898. 3. That the plaintiff can not recover more than it would have cost to remove the cause of injury by cleaning out the ditch. 4. That the plaintiff can not recover for the crop of 1900.

We do not think that any of these defenses can be maintained in view of the evidence and the resulting verdict of the jury.

It is well settled that no damages are contemplated in the original condemnation, except such as *necessarily* arise in the *proper* construction of the work.    Any other rule would be contrary to public policy as well as private right, and could never receive the sanction of the Courts.    The rule, with its underlying principles as applicable to the case at bar, is clearly stated in *Railroad v. Wicker,* 74 N. C., 220, as follows: "In the first of these cases (the obstruction of a natural or artificial drainway), it is the duty of the company in constructing its roadbed to leave a space sufficient for the

discharge of the water through its accustomed drainway, whether natural or artificial. If it fails to do so, any owner whose land is injured, whether he be one a part of whose land is taken for the road or not, may compel the company to discharge its duty by opening the drain to its previous capacity. And so, if the obstruction causes a nuisance, the corporation may be compelled to abate it. If the damage to the land of the defendant should be assessed to him, the corporation would acquire against him a right to pond his land perpetually, but not against any adjoining or other person injured, or against the public if it creates a nuisance. These might deprive the corporation of its use of the defendant's lands by reason of their right to compel it to open the drain. Under a rule which should subject the corporation to damages in cases of this sort, it would pay for a right which it could never get. And even if the ponding were entirely on the land of the defendant, so that this result would not follow, and the corporation would obtain a perpetual right to flood the land, yet it is contrary to public policy to give to one not the owner of the soil a right to reduce any land to perpetual uselessness, without necessity and without a corresponding benefit to any one." This case has been repeatedly cited with approval, and on this point especially in *Brown v. Railroad,* 83 N. C., 128, and *Knight v. Railroad,* 111 N. C., 80.

We have already said there was evidence of negligence to go to the jury. There is no evidence tending to show that the ditch could have been permanently repaired by the plaintiff at a cost less than his injury, even if it had been his duty to do so. On the contrary, the plaintiff testifies that it would have cost him a large amount to clean out the ditch, and that he could not have kept it clean without logging the bank of the canal, which would evidently have entailed great expense. This is not like a fence on the plaintiff's own land, which he might have permanently repaired at little trouble

or expense.    The defendant not only failed to perform its positive duty of keeping the ditch open, but caused the injury by a direct act of negligence or of wilful indifference.    As this action is not simply for the recovery of yearly damages, but includes a legal condemnation of the resulting easement, it is proper that all damages should be included. *Beach v. Railroad,* 120 N. C., 498; *W. J. Lassiter v. Railroad,* 126 N. C., 509.    While Chapter 224 of the Public Laws of 1895, applies only to railroads, yet, as this Court has extended the rule of permanent damages to water companies and telegraphs, under the principle laid down in *Ridley v. Railroad,* 118 N. C., 996, we see no reason why it should not equally apply to canals.    *Geer v. Water Co.,* 127 N. C., 349; *Phillips v. Tel. Co.,* at this term.

As the issue of permanent damages was submitted without objection, we must assume its propriety under the circumstances of this case.    The judgment of the Court below is
    Affirmed.