**HARPER, Plaintiff, v JONES, ET, Defendants.**

Common Pleas Court, Tuscarawas County.

No. 27062.   Decided December 26th, 1946.*

Paul Reed, Uhrichsville, and Robert E. Hall, Columbus, for plaintiff.

P. S. Olmstead and Fisher, Limbach, Smith and Renner, all of New Philadelphia, for defendants.

## OPINION

By LAMNECK, J.

On or about April 6, 1942, the plaintiff in this action for a valuable consideration secured a warranty deed from the Carnegie-Illinois Steel Corporation for all the coal now remaining unmined and in place in and underlying 153.95 acres of land, a part of which is .53 acres of land owned by the defendants. The defendants' tract of land abuts a state highway on the east and nearly all of the 153.95 acre tract of land lies west of this highway. The plaintiff acquired other mineral rights from the Carnegie-Illinois Steel Corporation in and under other lands in the aforesaid warranty deed which abuts this land.

The Carnegie-Illinois Steel Corporation acquired its record title to the coal rights under this land from William H. Houk, et al., on November 11, 1915, when it operated under the name of the American Sheet and Tin Plate Company.

In the conveyance to the plaintiff, dated April 6, 1942, the following is included: "Together with the free and uninterrupted right of way in, upon and under such lands, at such points, and in such manner as may be proper and necessary for the purpose of digging, mining, ventilating, testing and carrying away said coal, and of transporting and carrying away other coal now or hereafter owned by the Grantee, without any liability whatsoever for damages arising therefrom or from the removal of all of the aforesaid coal.

"Also, the free and uninterrupted right to place, maintain, remove and replace on and under the surface, all fixtures, structures, machinery, and appliances, railroad tracks, etc., deemed necessary, convenient or advisable by the Grantee, to, or in connection with, the operation and mining of the coal underlying the said lands hereinbefore described, as well as other coal now or that may hereafter be acquired by said Grantee. And also the right to do all things required to air and drain the workings through the surface of the aforesaid land. To erect and maintain on the surface all necessary poles and wires for electrical power in connection with the opera-

tion of the mining of the aforesaid coal. Also the right to mine or remove said coal, with or without leaving support to the surface of said land, except however, that no coal shall be mined nearer than 150 feet to the dwelling now erected and located on said premises, namely the dwelling house mentioned in the deed hereinafter recited, sometime occupied by one William H. Houk. Said Grantor also hereby conveys and grants to said Grantee, his heirs and assigns, a right of way to establish and maintain a railway tract and switches, if necessary, from the most convenient point to said Grantee, leading from the present location of The Baltimore and Ohio Railroad Company's line as such right of way was granted and conveyed to the American Sheet and Tin Plate Company in the deed hereinafter recited."

This is practically the same language contained in the deed to the plaintiff's predecessor in title dated November 11, 1915, except that this deed grants "a right of way to establish and maintain a railway track and switches, if necessary, from the most convenient point to said grantee leading from the present location of the Baltimore and Ohio Railroad Company's line to the opening now in operation under a lease held by said grantee, and to the place where, if said grantee shall open a mine in any other vein of coal in or upon said premises, which may hereafter be selected, but in all events to adhere as closely as possible along the same right of way as is now being used by said grantee under the aforesaid lease."

The defendants acquired their title from Alva and Agnes Veley on September 14, 1940, by warranty deed in which there is a saving and excepting clause reading as follows: "Saving and excepting from said tract all the coal underlying the same which was sold to the American Sheet and Tin Plate Company."

The Veleys acquired their title on February 28, 1920, by warranty deed in which there was an exception to the coal.

Some time during 1944 the plaintiff made preparations to open a "right of way" over the defendants' land, and the defendants refused and prevented him from having access over the lands of the defendants for the purpose of preparing a right of way.

The plaintiff in this action seeks to permanently enjoin the defendants from interfering in any manner with the plaintiff, his agents and employes from entering and using the right of way alleged to be owned by the plaintiff.

The right of way referred to in the prayer of the petition

is described as "a right of way from the most convenient point of said land so conveyed to the B. & O. Railroad Company's line."

It appears from the evidence that the plaintiff intends to construct a truck and wagon road over the defendants' lands to mine the number six vein of coal making an entry near the entry of an old mine about 350 feet from the defendants' west boundary line. A so-called railroad and wagon mine was operated on the 153.95 acres described in the petition for over fifteen years, but mining operations were suspended some time during 1916 or 1917 and no coal has been mined on this land since, with the exception that the tenants on the land mined some coal for their own use, but none has been so mined for the past three years.

At the time the mine was in operation commercially, a single track railroad switch from the B. & O. Railroad to the tipple of the mine was located on part of the defendants' land. This switch after it crossed the highway entered land north of the defendants' land, then entered the defendants' land in a southwesterly direction at a point near the middle of the defendants' north boundary line, and then proceeded in a westerly direction to the mine tipple, a distance of approximately 350 feet from the defendants' west boundary line.

A wagon road entered the premises from the highway at a point just north of the railroad switch where it crossed the highway and extended in a westerly direction to the mine mouth. This roadway was used for hauling in materials and supplies and also to convey coal by wagon away from the mine. No part of this roadway was located on the defendants' premises. Both the railroad siding and the wagon road fell into disuse after mining operations ceased and have not been physically existent for more than 21 years.

The land of the defendants is fenced in and a chicken house stands on part of the old roadbed of the railroad switch at the present time.

The evidence also shows that the entire tract of the defendants' land in question has been used in connection with other abutting land of the defendants on which a residence is located, for gardening and other incidental domestic purposes for over 21 years.

From the evidence submitted in this case it is clear that the plaintiff acquired all of the coal now remaining unmined and in place in and under approximately 153.95 acres of land of which .53 acres owned by the defendants is a part, and that such title was acquired by proper deeds in a chain of title from

Wm. H. Houck, et al., who owned both the surface and the minerals underlying the whole tract. Such conveyance covered the coal from the surface, leaving the surface owner with an estate in fee and the owner of the coal with an estate in fee.

A severance of minerals carries with it the right to enter and remove the minerals. In 27 O. Jur., Sec. 6, p. 42, citing **Stambaugh v Smith, 23 Oh St 584; Newark Coal Co. v Upson, 40 Oh St 17;** and **Moore v Indian Camp Coal Co., 75 Oh St 493, 80 N. E. 6,** the rule is stated thus: "When there has been a sale of the mineral lying under land, and a severance of the estate in the surface, the title thus obtained by the owner of the mineral is an estate in fee, with an easement in the balance of the estate, which terminates when the mine is exhausted. Such a sale of the minerals and severance of the estate carry the right to enter and remove it."

Where a deed conveys the minerals in land with a right to use the surface to construct roads and surface ways for purposes of transportation **for the removal of such minerals and the minerals from other lands,** the grant of such easement is **an appurtenance** to the grant of the minerals contained in the land. (See 48 A. L. R. page 1418 citing Jones v Island Creek Coal Co., 79 W. Va. 532, 91 S. E. 391.) An appurtenant easement runs with the land and passes by a deed of conveyance. **(15 O. Jur., Sec. 6, p. 16, and Sec. 81, p. 106.)**

This court held in **Yoss v Markley, 46 Abs 217, 34 OO 4** that "minerals that have been severed from the land cannot be acquired by the owner of the surface by adverse possession by force of the possession of his own estate, or by nonuse by the owner of the minerals or by reason of the failure of taxing authorities to separately levy taxes on the minerals."

From the facts and circumstances shown in evidence in this case, it would therefore follow that the defendants' claim of adverse possession and abandonment is not well taken since the title to the coal has not been so lost, and the right to use and construct roads as it existed at the time of the grant must be held to be still in existence as an appurtenance to the grant of the coal.

It is conceded that a switch from the B. & O. railroad crossed the .53 acres of defendants' in question in this case and proceeded in a westerly direction to a mine tipple a distance of approximately 350 feet from the defendants' west boundary line, but that this switch fell into disuse when mining operation ceased over 21 years ago and has not been physically existent for over 21 years. This switch was used to carry coal,

etc., to and from the opening of a mine for the number seven vein of coal wihch is now apparently exhausted. The plaintiff now desires to open up the number six vein and it appears that such a situation was in contemplation of the parties when the original conveyance of coal was made on November 15, 1915. In the deed from William H. Houck, et al., recorded in Vol. 175, p. 510 of the Deed Records of Tuscarawas County, a right of way was granted "to establish and maintain a railway track and switches, if necessary, from the most convenient point to the said grantee leading from the present location of the Baltimore and Ohio Railroad Company's line to the opening now in operation under a lease held by said grantee, and to the place where, if said grantee shall open a mine in any other vein of coal in or upon said premises, which may hereafter be selected, but in all events to adhere as closely as possible along the same right of way as is now being used by said grantee under the aforesaid lease."

It is clear from this provision that this was the only right of way for a railroad track and switches contemplated by the parties under the conveyance of the coal, and that said conveyance does not authorize the construction of another railroad track and switch over any other right of way. Since the opening of another vein of coal is contemplated by the plaintiff, the deed limits the right of way for a railroad track and switches "as closely as possible" to the one formerly existent and which crossed the .53 acres of the defendants. The court is of the opinion that this is not the location of a right of way in general terms but is a definite location, and if the plaintiff desires to construct a railroad switch in conjunction with the opening of a new vein of coal, he must follow the old right of way as closely as possible and proceed to the point where the new opening or tipple is to be constructed.

The weight of authority holds that the surface owner has a right to enjoy and use the lands free from annoyance, except such as reasonably arises from the opening, exploration, mining and marketing of the minerals granted. He may build a house on a location which does not interfere with the mining operations. (Thompson on Real Property, Vol. 1, p. 144, citing Imperial Elkhorn Coal Co. v Webb, 190 Ky. 41, 225 S. W. 1077.)

In this case a chicken house has been constructed on part of the old right of way. If the plaintiff can construct a switch in a practical manner and without additional cost to himself on the defendants' premises and avoid interfering with this building, he must do so. Otherwise, the defendants must be given an opportunity to remove it.

The original deed to the American Sheet and Tin Plate Company granted "the free and uninterrupted right of way in, and upon and under such land at such points, and in such manner as may be proper and necessary for the purpose of digging, mining, ventilating, testing and carrying away said coal, and of transporting and carrying away other coal not or hereafter owned by the grantee."

It appears from this provision that the easement for a wagon or truck road is not definitely located or described in the grant, and such a way has never been in existence over the .53 acre tract of the defendants.

Where an easement has not been fixed by definite location and description, what steps must be taken to locate such an easement?

Where a right granted has been once exercised in a fixed and definite course, with the full acquiescence and consent of both parties, it cannot be changed at the pleasure of the grantee. Such exercise of selection fixes the location and determines and limits the right of the grantee so that he cannot again exercise a choice. (**15 O. Jur., Sec. 63, p. 88;** 17 Am. Jur., Sec. 87, p. 988.)

The evidence shows that there was a roadway from what is now State Route 8, starting to the north of the railroad right of way, and continuing up the side of the hill to a mine opening entirely off what is now the property of the defendants. Consequently the foregoing rule has no application to the instant case.

Assuming that no roadway has ever been definitely established under the grant of the general easement in this case, or that the new mining operations contemplated by the plaintiff would make it impractical to use the one previously fixed, or if previously fixed that it would be inadequate for the plaintiff to enjoy his estate, the right to locate such easement belongs to the owner or owners of the servient estate in the first instance, provided they exercise such right in a reasonable manner, having due regard to the suitability and convenience of the way so located to the rights and interests of the owner of the easement. (**15 O. Jur., Sec. 61, p. 86;** 17 Am. Jur., Sec. 86, p. 987; 110 A. L. R., p. 175.)

Where the owner or owners of the servient estate fails or refuses to locate a way created but not located by a grant, the grantee of the way acquires the right to make his own selection of a location therefor, having due regard to the interests, rights and convenience of the other party or parties,

(110 A. L. R., p. 177), or the plaintiff may petition a court of equity to locate such right of way, (110 A. L. R., p. 180.).

It is quite clear that the Court cannot locate such right of way in this action because all of the owners of the servient estates are not before the Court, and the issues do not raise such a point for determination. There is also a lack of evidence for the Court to determine what roadway or way would come within the limits of the original grant which provides that a right of way in and upon and under such lands exists "at such points and in such manner as may be proper and necessary for the purpose of digging, mining," etc.

It will therefore be ordered that a permanent injunction be granted restraining the defendants from interfering with the plaintiff, his agent, or employes, in constructing a railroad track and switches across the defendants' land for the mining of the number six vein of coal under the plaintiff's land involved in this action on the right of way formerly existent for the mining of the number seven vein of coal under said land.

The other relief prayed for by the plaintiff for the reasons above cited is denied.

Exceptions.