FRED H. COOKE v. WAKE ELECTRIC MEMBERSHIP CORPORATION.

(Filed 1 February, 1957.)

**1. Easements § 5—**

Ordinarily, when an easement is granted in general terms which do not fix its location, the owner of the servient estate has the right in the first instance to designate the location of such easement, subject to the limitation that he exercise such right in a reasonable manner and with due regard to the rights of the owner of the easement.

**2. Same—**

If the owner of the servient tenement does not designate the location of an easement granted in general terms, the person owning the easement may select a suitable route, subject to the limitation that he take into consideration the interest and convenience of the owner of the servient estate.

**3. Same—**

Unless there is an express grant which provides otherwise, when the location of an easement is once selected, it ordinarily cannot be changed by either the landowner or the owner of the easement without the other's consent.

**4. Same—**

The owner of land conveyed an easement thereover for a power line with specific provision that the owner of the easement have the right to relocate same. The power line was constructed along a highway abutting the land. The relocation of the highway necessitated the relocation of the power line, and the owner of the easement reconstructed the power line approximately the same distance from the new highway that the old line was from the old highway, the new right of way having no greater length or width than the original one. *Held:* Under the terms of the easement the owner had the right to so relocate it without the payment of additional compensation.

**5. Same—**

Where the easement for a power line includes the right to relocate, and the owner of the easement advises the owner of the servient estate of the necessity of relocating the easement because of the relocation of the adjoining highway, and invites the owner of the servient estate to go upon the premises and agree upon a new location, but the landowner fails to do so or make any objection to the relocation of the easement by the owner thereof until the relocation is two-thirds completed, the landowner may not object to such relocation.

**6. Same—**

The highway abutting the lands of plaintiff was relocated, necessitating the relocation of defendant's easement for a power line. Because of the topography, the relocation of the highway made it less accessible from plaintiff's land because of a deep cut. *Held:* The damage resulting from the lessened accessibility to the highway is not due in any way to the relocation of the easement for the power line, and the landowner has no basis for the recovery of the resulting damage against the owner of the easement for the power line.

JOHNSON, J., not sitting.

APPEAL by plaintiff from *Seawell, J.,* February Civil Term 1956 of FRANKLIN.

This is a civil action instituted 1 October 1951, in which the plaintiff, who is the owner of a tract of land along U. S. Highway No. 1 in Franklin County, seeks to recover of the defendant compensatory damages in the sum of $1,000 on account of alleged loss and damage to his land occasioned by the defendant's action in relocating its power line on his premises.

It is stipulated by counsel for plaintiff and counsel for defendant that the land now owned by the plaintiff and described in the complaint in this action is the same land described in the instrument executed by G. L. Whitfield and wife to Wake Electric Membership Corporation and recorded on 18 April 1941 in Book 275, at page 128, in the office of the Register of Deeds of Franklin County, and that the plaintiff is successor in title to the said land.

On 8 May 1940, G. L. Whitfield and his wife executed the instrument referred to above for a good and valuable consideration, giving the defendant a right of way across their 134½ acre tract of land and specifically giving it the right "to place, construct, operate, repair, maintain, relocate and replace thereon and in or upon all streets, roads or highways abutting said lands an electric transmission or distribution line or system, and to cut and trim trees and shrubbery to the extent necessary to keep them clear of said electric line or system and to cut down from time to time all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling.

"In granting this easement it is understood that at pole location, only single pole and appurtenances will be used, and that the location of the poles will be such as to form the least possible interference to farm operations, so long as it does not materially increase the cost of construction."

The plaintiff, who lives on Highway No. 56 between Franklinton and Creedmoor, testified that when he purchased the land involved in this action, the Wake Electric Membership Corporation had a line running across it; the line ran across the land on the west side of the old highway (U. S. Highway No. 1). The land is located about 2½ miles from the Town of Franklinton and about 3½ miles from the Town of Youngsville. "The lay-out of the land was that before they (the Highway and Public Works Commission) cut the last highway the land ran down to the old highway, sloping slightly about a quarter of a mile from one end to the other; . . . As to any conversation I had with men from the Wake Electric Membership Corporation concerning a change of this line, they came to my house one day at lunch and talked to me; . . . they told me the Highway Commissioners were going to cut another road through there and they would have to move their line; I told them well I reckon they would have to move it back beyond where it was and I gave them permission to move it back from the road just so it would not take the whole road frontage—I thought later probably we would have some understanding. . . . I did not have any further dealings with them until I went by there and saw them cutting a right of way . . . on my land right at the edge of the highway."

Plaintiff's evidence further tends to show that he then retained counsel, and when he, his counsel, and a representative of the defendant went on the premises, the right of way had been cleared and the employees of the defendant were digging pole holes. On this occasion the plaintiff requested the agent of the defendant to run the line about 250 or 300 feet back from the highway, and stated that he would rather pay the added cost involved in putting the line on the back part of his land and that he "would give the right of way to them." The plaintiff, not hearing anything further from the defendant, instituted an action against it and obtained a temporary restraining order which was later dissolved.

On cross-examination, the plaintiff testified, "I don't know whether there is any difference in the space between the new easement right of way and the new highway and the old easement and the old highway. What I complained of is based upon the fact that I say the value has decreased, the value of my land between the right of way easement and the highway. I don't know whether the same condition exist (sic) with the old highway and easement, whether there was the same distance

between the line and the highway. The highway was building a new road and they had to move their line. . . . This man, Mr. Stephenson or Mr. Critcher, came to my house before anything was done and had somebody with him. When they came and told me that the Highway Commission was forcing them to move their line back and they would need more space, I told them it was all right to move it if they would move it far enough back. . . . Not so long a time elapsed from that time and I discovered where the right of way was actually run, it was something like one, two or three weeks. . . . I don't think any poles were up at the time I made my first complaint about the location . . . I bought this land in 1946 to develop into building lots."

According to plaintiff's evidence, the contour of the land abutting the old highway was such as to permit building houses behind the power line, but in constructing the new highway, which is a dual-lane highway, the Highway Commission left a strip of land from 25 to 30 feet in width between the north and south lanes of the highway and cut through the land of plaintiff leaving a cut "as high as that ceiling (presumably the courtroom ceiling) and ruined the slope. . . . I did not know the right of way condition, the words that allowed the Wake Electric Membership Corporation to relocate this power line, and I do not deny it had the right to relocate its line."

The plaintiff offered a witness, Phil R. Inscoe, who was held to be an expert land surveyor. This witness testified that he made a map showing the present location of U. S. Highway No. 1, the present location of the power line of the Wake Electric Membership Corporation, and that portion of Mr. Cooke's tract of land which adjoins the highway and over which the defendant's line now runs. This map was introduced in evidence as plaintiff's Exhibit A. This witness testified that the present power line takes up exactly the same space that it did originally. He further testified, "The terrain there is pretty rough. It slopes over, I would say that it is about forty-five per cent grade."

Plaintiff offered a number of witnesses who testified that in their opinion he had been damaged substantially by the relocation of the power line.

The defendant's evidence tends to show that before it took any action with respect to the relocation of its line, two of its representatives, Mr. Linwood K. Stephenson and Mr. I. J. Critcher, went to see the plaintiff and explained to him the necessity of relocating the power line; that they informed him they would come back to see him after a survey was made showing the proposed location for the line; that they went back and told him the survey had been made, that is, the new right of way had been surveyed and staked out on the land, not on a map, and the plaintiff told them he did not have the time to look at it,

but that it would be all right and to keep as close to the highway as they could. The next time the defendant heard from the plaintiff was through his attorney. The defendant's evidence bearing on the location of the present right of way is to the effect that at some places it is a little farther from the new highway than it was from the old highway, while at others it is closer to the new highway than it was to the old highway; but that over all, the present right of way is nearer to the new highway than the old right of way was to the old highway.

The defendant's evidence further tends to show that when Mr. Cooke offered to pay the additional cost necessary to move the power line back some 250 or 300 feet from the road, he was requested to put the proposal in writing for submission to the officials of the defendant; that he got mad and said he would sue them, but at no time did he request the defendant or its employees to stop work on the new right of way; that the work in connection with the relocation of the power line was two-thirds complete when the plaintiff first objected to its location.

At the close of all the evidence the defendant renewed its motion for judgment as of nonsuit. The motion was allowed and the plaintiff appeals, assigning error.

*W. P. Pearce, E. F. Yarborough, and Hill Yarborough for plaintiff appellant.*
*Donald Gulley and Malone & Malone for defendant appellee.*

DENNY, J. The sole question presented on this appeal is whether or not the court below committed error in sustaining the defendant's motion for judgment as of nonsuit and in entering judgment accordingly.

As we interpret plaintiff's evidence, before the Highway and Public Works Commission built the southbound lane of the dual highway to the west of what is now the northbound lane of U. S. Highway No. 1, the defendant's power line occupied space west of the right of way of U. S. Highway No. 1 and approximately the same distance therefrom as the present power line does from the western edge of the present right of way of the new dual-lane highway. However, in constructing the southbound lane of the new dual highway, the Highway Commission left a strip of land approximately 30 feet wide between the north and south lanes of the new highway and extended its right of way, according to plaintiff's Exhibit A, approximately 50 feet west of the western edge of the pavement of the southbound lane of the dual highway. Therefore, since the plaintiff's land slopes toward the highway at a grade of about forty-five per cent, the Highway Commission, in grad-

ing for the new highway, necessarily left a high bank west of the new southbound lane through the plaintiff's farm. Consequently, there is no room between the southbound lane of the dual highway and the highway bank to the west of said lane for the location of the defendant's power line. Hence, the defendant cut its right of way through the woods near the top of the embankment. In light of these facts, we think this appeal may be disposed of by the consideration and determination of these questions: (1) Is the defendant entitled to relocate its power line on the premises of the plaintiff under the terms of the easement held by it, without paying additional compensation therefor? (2) Did the plaintiff have the right to determine where the new right of way should be located, and if so, did he waive such right by his failure to object to the location chosen by the defendant until the work in connection with the relocation of the line was approximately two-thirds finished?

Ordinarily, when an easement is granted in general terms which do not fix its location, "the owner of the servient estate has the right in the first instance, to designate the location of such easement. This right, however, must be exercised in a reasonable manner, with due regard to the rights of the owner of the easement. In this situation, if the owner of the servient estate does not designate the location, the person entitled to an easement may select a suitable route, taking into consideration the interest and convenience of the owner of the land over which the easement passes. (*Harper v. Jones*, 35 Ohio Ops. 524, 49 Ohio L. Abs. 289, 74 N.E. 2d 397.) . . . It has also been declared that if a deed so authorizes, the grantee of an easement may shift the location of an easement, but a right in a deed to 'alter, repair, or renew' does not convey such authority." 17 Am. Jur., Easements, sections 86 and 87, page 987, *et seq.*, and cited cases. *Ford v. White*, 179 Ore. 490, 172 P. 2d 822; *Quatchita Rural Electric Co-Operative Corp. v. Bowen*, 203 Ark. 799, 158 S.W. 2d 691.

Unless there is an express grant which provides otherwise, ordinarily, when the location of an easement is once selected it cannot be changed by either the landowner or the owner of the easement without the other's consent. 17 Am. Jur., Easements, section 87, page 988, *et seq.*; 28 C.J.S., Easements, section 84, page 763; *Drainage Dist. v. Holly*, 213 Ark. 889, 214 S.W. 2d 224.

The easement held by the defendant not only gave it the right to locate but to relocate its power line on the premises of the plaintiff. However, the poles were to be so located as "to form the least possible interference to farm operations," and such restriction was to prevail only "so long as it does not materially increase the cost of construction." The easement further expressly provides that the line may be

located, relocated or replaced thereon in or upon all streets, roads or highways abutting the lands described in the right of way agreement.

In *Quatchita Rural Electric Co-Ooperative Corp. v. Bowen, supra,* the landowner signed a right of way agreement in pertinent terms identical with the right of way agreement involved in this appeal. At the time the agreement was signed, however, the Co-Operative's agent exhibited a plat showing that the power line would cross only a corner of the owner's land and only two poles would be located thereon. Later it developed that the corporation had difficulty in obtaining some other rights of way and built its line for a distance of one-half mile on the defendant's land. The Court held that the right of way agreement permitted the change in the route but upheld damages assessed for the timber cut on the substituted route, there having been no timber on the route shown on the map. It would seem that in this case damages should have been assessed for the additional length of the right of way. The Court said, however, no additional damages were assessed, and there was no appeal from the failure to do so.

In the case before us, the present right of way has no greater length or width than the original one.

Certainly, a power line is more easily serviced when it is near the highway. Furthermore, when it is a line from which customers are to be served on both sides of the highway, it is more practical to locate the power line as near as feasible to the highway. Ordinarily, a power line when located near the highway interferes less with farming operations than it does when it runs across a farm several hundred feet from the highway. Consequently, in our opinion, since the defendant chose to locate its right of way originally along U. S. Highway No. 1, when the State Highway and Public Works Commission took that right of way for highway purposes, the defendant had the right, under the terms of its right of way agreement, to relocate its line adjacent to or as near as practicable to the new highway without paying any additional compensation therefor. However, if the plaintiff, prior to the relocation of the line, had so developed the area selected by the defendant as to make the location of the defendant's line thereon a dangerous hazard to the occupants thereof, in our opinion the plaintiff would have had the right to designate another suitable route, taking into consideration the rights and convenience of the respective parties, but which would, as near as practicable, eliminate the hazard involved to the occupant or occupants of the involved area.

We do not think, however, in relocating its right of way under the conditions disclosed on the record in this case, the defendant would have had the right to locate its line substantially farther away from the new highway than it was previously located from the old highway, without the consent of the plaintiff, since it appears to have been rea-

sonable and practicable to locate the line substantially the same distance from the new highway. The mere fact that the plaintiff decided he wanted the line to be 250 or 300 feet from the highway, and according to his testimony, offered to pay the extra cost which would be involved in so locating the line, in our opinion, imposed no legal obligation on the defendant to so locate the line. Certainly the defendant under the terms of the right of way agreement would have had no right without the consent of the plaintiff·to· place its power line on his premises some 250 or 300 feet from the highway. Neither would it seem to have the right to erect an extension or extensions across the premises of the plaintiff to serve other customers without additional compensation therefor. *Jackson Electric Membership Corp. v. Echols,* 84 Ga. App. 610, 66 S.E. 2d 770.

Since the plaintiff did not see fit to go upon the premises and agree upon a new location for the defendant's power line, as he was invited to do, the defendant had the right to select the site for the relocation, provided, the site selected did not violate the provisions of its right of way agreement, and in our opinion it did not. *Smith v. Jackson,* 180 N.C. 115, 104 S.E. 169.

In the last cited case, the plaintiff claimed an easement by prescription which entitled him to use a road over the defendant's land. The defendant was permitted to testify, over the objection of plaintiff, as to why he closed the road in controversy and that he had built a new road which was more beneficial to his farm and over which the plaintiff could reach the public highway. This Court said: "The evidence offered was plainly irrelevant and incompetent, and calculated to mislead and prejudice the jury. It was the title to the easement which was the issue to be decided, and not whether it was injurious to the defendant's farm. It matters not how detrimental the lane was to the defendant's land, if the plaintiff had acquired title to the use of that lane by prescription it is as effective as if he had acquired title by deed. The defendant could not deprive him of his easement by providing another outlet."

The plaintiff does not challenge the right of the defendant to relocate its power line. Even so, he does not concede that the defendant had the right to run its line across the back of his farm. His own testimony in this respect was to the effect that if the defendant would move its power line back 250 or 300 feet he would pay for the additional cost involved and give the right of way. Furthermore, the plaintiff in his testimony limits the cause for the decrease in the value of his farm not to the location of the defendant's right of way, but to the decreased "value of my land between the right of way easement and the highway." It is clear from the evidence in this case that the construction

of the southbound lane of the present dual highway on the property of the plaintiff has greatly lessened the accessibility of the plaintiff from his premises to the highway, but there is no evidence that the present right of way of the defendant interferes with the plaintiff's accessibility to the present highway any more than the original line did to the old highway. Moreover, this defendant is in no way responsible for the physical condition in which the plaintiff's premises were left as a result of the construction of the southbound lane of the present U. S. Highway No. 1.

A careful consideration of the evidence disclosed by the record herein is insufficient to show that the plaintiff has sustained any loss by reason of the relocation of the defendant's power line for which he is entitled to recover from the defendant.

For the reasons stated, the judgment of the court below is

Affirmed.

JOHNSON, J., not sitting.