JAMES T. STRICKLAND v. RICHARD A. SHEW.

(Filed 17 January 1964.)

**1. Easements § 8—**

The grantor of an easement of access may not obstruct the easement so as to interfere with its reasonable enjoyment by the grantee, and he has no right to do or permit the doing of anything which results in the impairment of the easement granted.

**2. Same—   Whether grantor interferred with reasonable use of easement held for jury on evidence.**

The deed in suit conveyed a lot with an easement in a street to be opened along the side of the lot. The evidence disclosed that the grantor, under the provision of a restrictive covenant in the deed, approved plans for middle, opposite the carport, there was a cut of some six feet, so that a street to be constructed, and that when the street was constructed its grade was approximately even with the lot at each end, but that in the middle, opposite the carport there was a cut of some six feet, so that a driveway useable by automobiles could not be constructed from the street to the carport. *Held:* The evidence requires the submission to the jury of the question whether the street so constructed afforded reasonable ingress, egress, and regress with respect to plaintiff's lot.

MOORE, J., concurring in result.

PARKER and BOBBITT, JJ., join in concurring opinion.

APPEAL by plaintiff from *Parker, J.,* March 1963 Session of NEW HANOVER.

Action for damages for interference with an easement of access.

These facts are established by the pleadings: In 1956 defendant was the owner and developer of a residential subdivision in Wilmington known as Sherwood Forest. On September 19, 1956 he sold plaintiff a lot fronting on East Lake Shore Drive in the subdivision. At that time the defendant exhibited to plaintiff a plat showing the general layout of Sherwood Forest and agreed that a street would be constructed along the south side of the lot. The deed which defendant delivered granted plaintiff an easement in and to that street in the following language:

"The parties of the first part hereby give, grant, and convey unto the said parties of the second part a right-of-way and easement of egress, ingress and regress over and upon that said road or roads, adjoining the above described lot and bounded and described as follows." (Description of the street is set out by metes and bounds.)

The deed also contained, *inter alia,* the following restrictions:

"2.   No building shall be located on said lot nearer than fifty (50) feet to the front of said lot and not nearer than ten (10) feet from the side of said lot, or nearer than ten (10) feet from the rear of said lot."

"5.   The plans and specifications of all buildings which shall be erected or moved on any lot shall be subject to approval by the developer, and the lot cannot be subdivided without the approval of the developer."

Plaintiff submitted the plans for his house to the defendant who approved them on January 30, 1957. Thereafter plaintiff constructed a house on the lot in accordance with the plans which included a carport on the south side of the house.

At the trial, plaintiff's evidence was sufficient to show the following: His lot fronts west 95 feet on Lake Shore Drive and South 201 feet on Robin Hood Drive. At the time plaintiff submitted his plans to the defendant, it was understood between them that the house was to be located near the center of the lot and that the carport would open to the south on the new road to be constructed (Robin Hood Drive). The house, when completed in July 1957, was situated 70 feet back from Lake Shore Drive, 10 feet from the north property line, and the entrance to the carport was 18 feet from Robin Hood Drive.

At the time of the sale, a dirt road ran from East Lake Shore Drive along the south side of plaintiff's lot, cutting across it at the rear. This road was level with plaintiff's lot but was considerably higher than the lot across the road on the south. As an inducement to the plaintiff to purchase the lot for $2,300.00, defendant pointed out the enhanced value it would have as a corner lot when the new road was opened. They did not discuss the manner in which the road was to be constructed.

Defendant began the construction of Robin Hood Drive about September 18, 1961. Over plaintiff's protest, the road was graded in such a way that there is now a perpendicular drop of from 3 to 6 feet along the south side of the lot. At the entrance to the carport the drop is 6 feet. The dirt removed when the road was graded was used to fill in the lots across the street as well as another low area in the development. The low grade of Robin Hood Drive has made the plaintiff's carport inaccessible. Any driveway constructed to it from the street would have to be so steep that a car would drag upon entering the carport. If the carport is ever to be used, it must be rebuilt so that it can be entered from the east over a drive constructed from the rear of the lot. This construction would cost $1,121.85. As a result of the grading of Robin Hood Drive the market value of plaintiff's property has been reduced $2,750.00. On August 30, 1963 the State Highway Commission took over the maintenance of Robin Hood Drive.

At the conclusion of plaintiff's evidence, the defendant's motion for judgment as of nonsuit was allowed and the plaintiff appealed.

*Poisson, Marshall, Barnhill & Williams for plaintiff appellant.*
*Aaron Goldberg and John J. Burney for defendant appellee.*

SHARP, J.   At all times pertinent to a decision of this case Robin Hood Drive was not a public road. While the State Highway Commission is now maintaining it, the rights and liabilities of the parties are to be determined by their deed and not the rules applicable to a governmental agency when it opens or changes the grade of an existing street or highway. See *Smith v. Highway Commission,* 257 N.C. 410, 126 S.E. 2d 87; *Jenkins v. Henderson,* 214 N.C. 244, 199 S.E. 37; *Wood v. Land Co.,* 165 N.C. 367, 81 S.E. 422; *Cf. Bennett v. R.R.,* 170 N.C. 389, 87 S.E. 133; *McGarrity v. Commonwealth,* 311 Pa. 436, 166 A. 895.

By purchasing a lot within a subdivision with reference to the plat thereof, plaintiff acquired the private right to have each and all of the streets shown on the plat kept open or available for opening as occa-

STRICKLAND v. SHEW.

sion might require. *Steadman v. Pinetops*, 251 N.C. 509, 112 S.E. 2d 102; *Somersette v. Stanaland*, 202 N.C. 685, 163 S.E. 804. Here, however, plaintiff is not relying upon any rights which he might share in common with other property owners in the subdivision or upon any implied right of access as an abutting landowner. By his deed from defendant, plaintiff acquired a specific easement of access in the road *adjoining his lot* on the south. Access from the street was not limited to any particular portion of the lot.

One, who by his deed has specifically granted to another an easement of access, may not obstruct the easement in such manner as to prevent or to interfere with its reasonable enjoyment by his grantee. The grantor is obligated to refrain from doing, or permitting anything to be done, which results in the impairment of the easement. 17 A. Am. Jur., *Easements* § 137.

It is apparent that the parties contemplated direct, practical, and reasonable access to *all* parts of the lot from the street whenever it was opened. Such use in a residential development today necessarily includes access by automobile. At the time plaintiff purchased the property in question a dirt road, level with the lot, ran from East Lake Shore Drive along a portion of its south line. Prior to the construction of Robin Hood Drive defendant approved house plans for the plaintiff which showed that access to the carport could be had only from that street. The fact that plaintiff's property would eventually become a corner lot, with access from two streets, was one of the material inducements of the sale. Obviously a second street would add nothing to the value of a lot if, when opened, it provided only a jumping off place for children to disport themselves.

Under the evidence in this case it is for the jury to say whether the defendant constructed Robin Hood Drive so as to afford reasonable ingress, egress, and regress with respect to the plaintiff's lot. If he did not, the plaintiff would be entitled to recover the depreciation in the market value of his lot which was proximately caused by his failure to provide such access.

The judgment of nonsuit is

Reversed.

Moore, J., concurring in result:

When land is subdivided into lots and a map is made thereof showing streets, and lots are sold with reference to such map, the owner of the subdivision thereby dedicates the streets to the use of those who purchase the lots for ingress and egress. The lot purchasers acquire easements of ingress and egress, but are entitled to exercise only such

rights thereunder as may be necessary to a reasonable and proper enjoyment of their premises. *Hine v. Blumenthal,* 239 N.C. 537, 80 S.E. 2d 458; *Rudolph v. Glendale Improvement Co.,* 137 S.E. 349 (W. Va.). In the instant case, the deed from defendant to plaintiff sets out this right of ingress and egress in express terms, as follows: "The parties of the first part give, grant, and convey unto the parties of the second part a right of way and easement of egress, ingress and regress over and upon that certain road or roads, adjoining the above described lot . . . ."

Nothing passes by implication as incident to the grant of easement except what is reasonably necessary to its fair enjoyment. *Hine v. Blumenthal, supra.* In construing the grant of easement, the court will look to the circumstances attending the transaction, the situation of the parties and the object to be obtained. *Stevens v. Bird-Jex Co.,* 18 P. 2d 292 (Utah).

Plaintiff's lot is residential property and restricted to one residence. It was undoubtedly contemplated that plaintiff might own one or more automobiles for use of himself and family, and would require one or more entrances to the street and road abutting his lot on the west and south, respectively, for the car or cars. It was not contemplated that plaintiff would be permitted to enter the street at every point along the 205 feet of south frontage. *Barrett v. Duchaine,* 149 N.E. 632 (Mass.). This is true for two reasons. Such extensive use is not necessary to the fair and reasonable enjoyment of the easement. An easement must not unreasonably interfere with the rights of the owner of the servient estate. *Ingelson v. Olson,* 272 N.W. 270, 110 A.L.R. 167 (Minn.).

Plaintiff's easement as set out in the deed does not fix the location of the entrance or entrances to plaintiff's lot. When an express easement does not fix the location of the way, the grantor of the easement has the right to designate the location in a reasonable manner with due regard to the rights of grantee. If grantor does not locate the way, grantee may do so if he takes into consideration the interest and convenience of grantor. *Andrews v. Lovejoy,* 247 N.C. 554, 101 S.E. 2d 395; *Cooke v. Electric Membership Corp.,* 245 N.C. 453, 96 S.E. 2d 351; Anno: 110 A.L.R. 176-178.

"When the grant of an easement of way does not definitely locate it, it has been consistently held that a reasonable and convenient way for all parties is thereby implied, in view of all the circumstances." 110 A.L.R. 175. When plaintiff purchased his lot the road in question had not been opened. There was a "dirt road from East Shore Drive (the street along the west end of plaintiff's lot) along the south of plain-

tiff's lot, cutting across it at the rear," but there is no contention that this was the road shown on the map, or that the proposed road when opened would be the same in construction, elevation or exact location —"They did not discuss the manner in which the road was to be constructed." Plaintiff's lot was low at the east and west ends and high in the middle. At the place where the proposed road was to be constructed the terrain sloped downward to the south so that the lot on the south side of the proposed road was a low place, much lower than the high point on plaintiff's lot. The purchaser of a lot is fixed with notice of its natural condition. 41 A.L.R. 1443. In constructing the street it was necessary for defendant to take many things into consideration. Plaintiff's witness, Mr. Von Oesen, a civil engineer, testified:

> "The streets and roadways in a subdivision, in being graded, after they are located are generally governed by several factors, each of which has a certain kind of bearing on the elevations and grading of the streets. The natural factor is always economy, and it is necessary to build a good street economically, and that means you would balance your cuts and fills so that the areas you cut down can fill the areas you have to fill in. The next governing factor would probably be drainage, and the roadway levels to provide adequate drainage to remove rain waters from surrounding areas of the street. There must be a surface sufficient to drive on, and also as for the elimination of sight obstructions. Another factor which is involved is the matter of conformity to adjacent lands, and access thereto, for the street is built primarily for the people building nearby; the access to adjacent lands. Normally the roadways serve areas they pass through.

Thus defendant was required to consider the suitability of the road as a thoroughfare, drainage and obstructions, as well as its adaptability to access to plaintiff's lot and the lot directly opposite. Whether defendant could reasonably provide an entrance to plaintiff's lot at the point plaintiff desired and also meet the other requirements is a question for the jury. When the road was opened, it was about at even grade with plaintiff's lot at the east and west ends of the lot; in the center the lot was much higher than the street. The difference in elevation between the edge of the pavement and the floor of plaintiff's carport is 6 feet—it does not appear how far above the surface of the lot the *floor* of the carport is. Plaintiff could not enter his carport from a driveway (if constructed) leading directly to the street because the elevation is such that a car would "scrape." But at many points both east and west of the carport a car can enter the lot at grade or by an

entrance of slight elevation. The door of the carport is 18 feet from the edge of the lot and at least 20 feet from the point where the cut begins. A car entering the lot to the east or west of the carport "could go in (the carport) with a skillful driver." It does not appear in evidence how wide the door to the carport is, but it is common knowledge that ordinary automobile operators drive cars into narrow driveways and parking spaces at right angles from highways and streets with less turning space than 18 to 20 feet. Plaintiff is not entitled, at all events, to the most convenient and direct route to his *carport,* else all streets and roadways in subdivisions must be approximately at lot grade regardless of the natural contour of the land. What plaintiff is entitled to is a reasonably convenient and proper entrance or entrances to his lot under the circumstances.

The location of an easement of way may be determined and fixed by implied agreement, acquiescence, or by parol agreement. 110 A.L.R. 178-180. And once it is located and fixed, it may not be altered except by mutual consent. *Smith v. Jackson,* 180 N.C. 115, 104 S.E. 169; *Mullen v. Canal & Water Co.,* 130 N.C. 496, 41 S.E. 1027; *International Pottery Co. v. Richardson,* 43 A. 692 (N.J.); *Tripp v. Bagley,* 276 P. 912, 69 A.L.R. 1417 (Utah). Plaintiff contends that by approving his house plans, including the plans for the carport, and by an "understanding" that the house would be built near the center of the lot with the carport facing the road in question, defendant assented to an entrance from the road directly into the carport. Defendant, of course, contends otherwise. This is also a question for jury determination.

I do not agree with the following statements in the majority opinion, as legal conclusions and principles: (1) . . . "Access from the street was not limited to any particular portion of the lot." (2) "It is apparent that the parties contemplated direct, practical, and reasonable access to *all* parts of the lot from the street whenever it was opened." For reasons already stated, it is my opinion that these statements are too broad and assume the truth of much plaintiff must prove by the greater weight of the evidence if he is to prevail.

PARKER and BOBBITT, JJ. join in this concurring opinion.