S. MILLER WILLIAMS AND ROSEBOROUGH RIDGE OWNERS' ASSOCIATION, INC. v. E. THOMAS ABERNETHY AND WIFE, ANN T. ABERNETHY

No. 9024SC854

(Filed 2 April 1991)

**Easements § 8.2 (NCI3d)— keeping gate across easement closed— right of servient owner to require—genuine issues of material fact**

Where an easement was created by an express conveyance and the conveyance was silent on whether the servient owner had a right to require the dominant owner to keep the gate across the easement closed, the relative advantage to the servient estate and the relative disadvantage to the dominant estate determined whether plaintiffs could require defendants to keep the gate closed; these were genuine issues of material fact; and the trial court therefore erred in entering summary judgment for plaintiffs.

**Am Jur 2d, Easements and Licenses §§ 89, 91.**

**Right to maintain gate or fence across right of way. 52 ALR3d 9.**

APPEAL by defendants from order entered 30 April 1990 in AVERY County Superior Court by *Judge Charles C. Lamm, Jr.* Heard in the Court of Appeals 19 February 1991.

*Hemphill & Gavenus, by Kathryn G. Hemphill and William B. Cocke, Jr., for plaintiff-appellees.*

*Randal S. Marsh and Larry S. Moore for defendant-appellants.*

GREENE, Judge.

The defendants appeal from the order of the trial court granting plaintiffs' motion for summary judgment and finding defendant E. Thomas Abernethy in civil contempt of court.

Plaintiffs filed this action seeking a permanent injunction enjoining the defendants from removing a gate which plaintiff S. Miller Williams (Williams) had installed across a right-of-way previously granted to the defendants by Williams. The defendants filed a counterclaim seeking an order that the right-of-way be declared "open and unobstructed perpetually" and also seeking an injunction restraining the plaintiffs from closing the gate across the right-of-way. Plaintiffs moved for summary judgment.

The evidence before the trial court included: Williams on 15 June 1980 conveyed to the defendant E. Thomas Abernethy (Abernethy) "all of the Tracts #2 and #3 of the Harbour Corporation lands as shown on map prepared by Robert E. Grindstaff, Registered Surveyor . . . and such map being recorded in Book 15, Page 4 of the Avery County Registry, Avery County, State of North Carolina . . ."; Tracts 2 and 3 represented a portion of the properties owned by Williams and were not contiguous to any state road; that on the map recorded in Book 15, Page 4 of the Avery County Registry there is depicted a sixty-foot private road right-of-way leading from Tracts 2 and 3 to North Carolina State Road 1511; on 30 July 1982, Williams and his wife conveyed to the defendants a "Deed of Easement" granting "a non-exclusive right of way and easement of ingress, egress, and regress . . . along and through the private gravel road being 60 feet in width" and connecting State Road 1511 to defendants' Tracts 2 and 3; neither the recorded map or the Deed of Easement made any reference to any gate across the right-of-way or contained any express reservation of the right of the plaintiffs to maintain such a gate; at the time the defendants purchased the property from Williams there was a locked gate maintained at the intersection of the sixty-foot right-of-way and North Carolina State Road 1511; at some point after the defendants purchased the properties they left the gate open or closed at their discretion; that defendants' properties are located in a subdivision known as "Roseborough Ridge" and there are other property owners in the subdivision who are all members of the Roseborough Ridge Owners' Association, Inc.; the defendants are the only full-time residents of the subdivision and the property

is located in a relatively isolated area in Avery County surrounded on three sides by national forest; in 1988, without the plaintiffs' permission, the defendants removed the gate from the premises; and Abernethy is totally disabled and that the defendant Ann Abernethy is in declining health and is "severely burdened by having to open or close the gate to acquire access to . . . [her] home." In evidence also was the affidavit of Ann Abernethy which provided in part:

> The position of the gate requires me to step in and out of a ditch a minimum of four (4) times a day to enter and exit my property, further, I have to leave the rear of my automobile in the state road travel surface to allow the gate to swing in an open position. I have to negotiate a down hill slope to close the gate upon entry to my drive.

The trial court ordered:

> 1. That summary judgment is hereby granted in favor of the Plaintiffs against the Defendants on the issue of the Plaintiffs' right to maintain a metal swing gate in a closed position on the private access road near its terminus at Roseborough Road;
>
> 2. That the Defendants are permanently enjoined from obstructing or interfering with the construction and maintenance of a swing gate in a closed position on the private access road;
>
> 3. That the Plaintiffs are entitled to maintain said gate in a closed position as a perpetual easement;
>
> . . . .

The trial court also found Abernethy in civil contempt of court for removing the metal gate after a temporary order had been entered prohibiting such removal.

---

The issue is whether the possessor of land (dominant owner) who has, as appurtenant thereto, an easement over the land of another (servient owner) may be required by the servient owner to keep a gate, placed across the easement by the servient owner, in a closed position.

When an easement is created by an express conveyance and the conveyance is "perfectly precise" as to the extent of the ease-

ment, the terms of the conveyance control. Restatement of Property § 483 comment d, at 3012 (1944) [hereinafter Restatement]; *see also Higdon v. Davis*, 315 N.C. 208, 215, 337 S.E.2d 543, 547 (1985); 3 R. Powell, Powell on Real Property ¶ 415[2], at 34-183 (rel. 1986); 2 G. Thompson, Commentaries on the Modern Law of Real Property § 425, at 651 (repl. 1980) ("extent of an easement is determined by the terms of the grant . . ."). "By the phrase 'extent of an easement' is meant the limits of the privileges of use authorized by the easement." Restatement, *supra*, § 482 comment a, at 3009. Where the language of the express conveyance is ambiguous as to the extent of the easement, the grant "may be interpreted by reference to the attendant circumstances, to the situation of the parties, and especially to the practical interpretation put upon the grant by the acts of the parties in the use of the easement immediately following the grant." 2 G. Thompson, *supra*, § 385, at 528; *see also* Restatement, *supra*, § 483, at 3010; *Jacobs v. Jennings*, 221 N.C. 24, 25-26, 18 S.E.2d 715, 715-16 (1942) (where express language stated that easement " 'shall be and remain as it now is,' " extrinsic evidence used to determine extent of easement when created). When, however, there is no language in the conveyance addressing the extent of the easement, extrinsic evidence is inadmissible as to the extent of the easement. However, in such cases, a reasonable use is implied. R. Cunningham, W. Stoebuck & D. Whitman, The Law of Property § 8.9, at 459 (1984); *see also Strickland v. Shew*, 261 N.C. 82, 85, 134 S.E.2d 137, 140 (1964). Therefore, in such cases "the servient estate may maintain a gate across the right-of-way if necessary for the servient estate and if it does not unreasonably interfere with the right-of-way use." 2 G. Thompson, *supra*, § 385, at 531; *see also Chesson v. Jordan*, 224 N.C. 289, 293, 29 S.E.2d 906, 909 (1944). "The determination as to what constitutes an unreasonable interference on the part of the possessor of the servient tenement with the use of the land by the owner of the easement depends primarily upon a consideration of the relative advantage to him of his desired use and the disadvantage to the owner of the easement." Restatement, *supra*, § 481 comment a, at 3008; *see also* Restatement, *supra*, § 486, at 3027 (privileges of servient tenement possessor).

Here the easement was created by an express conveyance and the conveyance is silent on whether the servient owner has a right to require the dominant owner to keep the gate across the easement closed. Therefore, whether the plaintiffs may require

the defendants to keep the gate closed depends on the relative advantage to the servient estate and the relative disadvantage to the dominant estate. In this case, genuine issues of material fact are presented, thus precluding entry of summary judgment. Because the defendants provided no argument as to why the temporary order giving rise to the contempt order is void, the assignment of error relating to the contempt order is taken as abandoned. N.C.R. App. P. 28(b)(5).

Contempt order affirmed; summary judgment order vacated and remanded.

Judges WELLS and WYNN concur.