JAMES A. MILLER, SR., ADMINISTRATOR OF THE ESTATE OF JAMES A. MILLER, JR., DECEASED v. D. R. COPPAGE AND WIFE, CASSIE COWELL COPPAGE.

(Filed 18 March 1964.)

**1. Evidence § 1—**

The courts will take judicial notice that Neuse River in Pamlico County is a large, navigable river.

**2. Waters and Water Courses § 6—**

The State owns lands covered by navigable waters within its territorial limits, except insofar as private rights have been acquired therein by State grant or otherwise, subject to the control of the Federal Government over commerce.

**3. Same—**

The owner of land having a State highway between it and a navigable river is not a riparian owner.

**4. Negligence § 7—**

The only negligence of legal import is negligence which proximately causes or contributes to the death or injury under judicial investigation.

**5. Negligence § 24a— Evidence held insufficient to show causal relation between excavation of sand from river bed and drowning of boy.**

Evidence tending to show that the male defendant dredged sand from the bed of a river, resulting in the existence of deep water some 12 feet from shore near a place where the public, including children, swam, that he failed to erect warning signs, and that plaintiff's intestate, a seven year old boy, drowned in the river and his body was recovered by grappling hooks, without evidence as to the spot where the boy was at the time he drowned, *held* insufficient to be submitted to the jury on the issue of actionable negligence, even if it be conceded that the boy's body was recovered from the hole or excavation created by the male defendant's dredging operations, since the boy's body could have been carried there by the current after he had drowned, and therefore there is no evidence that the creation of the excavation or failure to

erect warning signs was a proximate cause of the boy's drowning. A *fortior* the *feme* defendant's motion to nonsuit should have been allowed upon failure to prove that she was in any way responsible for the dredging operations.

**6. Trial § 22—**

Evidence which leaves the facts in issue in mere conjecture is insufficient to be submitted to the jury.

APPEAL by plaintiff from *Bone, E. J.*, October 1963 Session of PAMLICO.

Civil action to recover damages for the death of a seven-year-old boy caused by drowning in Neuse River.

From a judgment of compulsory nonsuit entered upon defendants' motion at the close of plaintiff's case, he appeals.

*John W. Beaman and Robert G. Bowers for plaintiff appellant.*
*Henry A. Grady, Jr., and Ward and Tucker for defendant appellees.*

PARKER, J.  Plaintiff's complaint alleges in substance: On 22 June 1961, and prior thereto, defendants owned certain lands on the northwest side of a highway known as Dawson's Creek Road in the vicinity of the mouth of Dawson's Creek in Pamlico County. For many years the general public, including children, have used the Neuse River shore beach property on the southeastern side of the Dawson's Creek Road for recreational purposes, including swimming, fishing, church picnics, and family gatherings, all to the knowledge of defendants. The beach and river bottom were sandy and even and suitable for recreational purposes, and the river with its sandy bottom was a safe place for people, including young children, to swim and play in. Defendants dredged out a few feet from the shore line and a few feet from Dawson's Creek Road a large hole many feet in depth and extending over a large area of the river bottom customarily used by the general public for recreational purposes, thereby creating a hazard and dangerous condition not visible to the general public, including children, without posting any signs or giving any notice or warning of such hazard and dangerous condition. Defendants used the sand which they dredged from the river bottom to fill in lands owned by them on the opposite side of Dawson's Creek Road.

On ...... June 1961 plaintiff's intestate, a seven-year-old boy who could not swim, in company with his grandfather and other children went to the beach and shore line of Neuse River, and while playing in the shallow water he fell into a hole or excavation and met his death by drowning. That his death was proximately caused by defendants' negligence in dredging the bottom of Neuse River, thereby creating a trap

and hazard, and in failing to provide adequate warning of the dangerous condition they created.

Defendants filed separate answers, which are *ipsissimis verbis*. Each defendant in his or her answer denies all the allegations of the complaint, except as to residence of the parties and that plaintiff's intestate was drowned on 22 June 1961, and alleges that each answering defendant "was the owner of an interest in one lot lying between the State Highway and Dawson's Creek, in the vicinity of the mouth of Dawson's Creek in Pamlico County."

Plaintiff's evidence shows these facts: At the point in Pamlico County where Dawson's Creek runs into Neuse River, Neuse River is about five miles wide and is a navigable stream. A State highway 20 feet wide with shoulders 15 feet wide runs in a westerly direction, as it approaches the bridge over Dawson's Creek, parallel with the beach of Neuse River. There is a large rock bulkhead or breakwater bordering the highway in the vicinity of Dawson's Creek, which extends east from Dawson's Creek probably 150 or 200 feet. The water of Neuse River extends to within about eight or ten feet of this rock bulkhead or breakwater.

There is sand all along the Neuse River shore at Dawson's Creek. For a number of years during the summer months a lot of people, children and families, and the public generally have used the beach of Neuse River in the vicinity of the mouth of Dawson's Creek for bathing, fishing, picnics and different recreational purposes. Few people bathed and swam at the point where there was a lot of rock, because they had to climb over the rocks to get to the beach and water. Generally, in the vicinity of Dawson's Creek the water of Neuse River was about 18 inches deep out to a distance of about 100 or 150 yards.

Prior to June 1961 John W. Cowell, Sr., father of the *feme* defendant and father-in-law of the male defendant, owned 1,600 acres of land in the area of Dawson's Creek, and the male defendant owned some to the east of his property. The male defendant's business is ditching and dredging. Mr. Cowell testified: "Almost across the road from where this hole was dug in Neuse River there is a summer cottage or rather in that neighborhood. I have a home there and Mr. Furney Gaskins, the ex-Postmaster of Stonewall has one there. I am familiar with a shack that was put over on that side of the road that came from the airport that was put there by Dr. Coppage. I knew that dredging was being done in the Neuse River when it was being done and that Dr. Coppage was the man, but I don't recall his name, but it was under Dr. Coppage's supervision, I think. The dirt and sand, etc., that came from the dredging operation was put across the highway on the marsh, which was own-

ed by me at that time, upon land where the shack was placed, which is now owned by Dr. Coppage and conveyed to him by me."

On 22 June 1961 plaintiff's intestate James A. Miller, Jr., was seven years and four days old and in good physical condition. About 9:15 a.m. on this day he left his home in company of his grandfather and another boy. He had his bathing suit with him. They were going to a Mr. Edwards' to pick up some children, and then to Camp Don Lee for swimming instructions. Plaintiff testified: "I don't personally know whether he could swim, but he was taking swimming lessons at that time at Camp Don Lee." Plaintiff alleges in his complaint that his son James A. Miller, Jr., was "unable to swim."

On the afternoon of 22 June 1961 Alton Lee, a witness for plaintiff, went to Dawson's Creek Road in the vicinity of where it crosses the bridge over Dawson's Creek. When he arrived about 50 or 75 people were there. He first saw the dead body of plaintiff's intestate in Neuse River about 200 or 250 feet from the State highway and between 100 and 150 yards east of Dawson's Creek bridge. His recollection is that the boy's body was pulled out of the water by Messrs. Barkley and Hudson, game protectors. Hudson is now dead. He is familiar with where the deep water is in Neuse River, and it gets deep because the sand was dredged out. He does not know who did the dredging. On that day the water was muddy, and he could not see the bottom anywhere in the river, even up near the shore, over three or four inches deep or a foot anyway. He did not see plaintiff's intestate drown and does not know the point in the river where he drowned. Alton Lee, recalled for further cross-examination, testified: "I arrived there between two and three o'clock as a rough guess, and had been there probably an hour when Mr. Edwards arrived and I saw the sign that said 'Danger, Deep Water.' My best opinion is that the sign was 90 feet from the high-water mark of the Neuse River."

L. L. Wise, a witness for plaintiff and a deputy sheriff of Pamlico County, on the afternoon of 22 June 1961 went to the scene. He testified in substance: He was not there when the dead body of Luther Miller, the grandfather of plaintiff's intestate, was pulled out of the river. He was there a good while before they found the body of plaintiff's intestate. Some people tried to find it by diving, but did not. They sent for hooks. When the hooks arrived, Messrs. Barkley and Hudson went out on the river in a boat with the hooks, and dragging with them they hooked the boy's dead body and brought it in to the wharf. The hole was dug about 200 or 250 feet from the highway. The water in the hole was over people's heads. That is where people were diving trying to find the boy's body. He testified: "The only way I can describe the

hole as far as width and length is concerned is by seeing people walking around in the water with nets. Like I said, they took a net, got a net up there to draw across there to try to find the boy. A group of people took ahold of the net and walked around the hole and they pulled it across and didn't find the boy — the child — that way, and then they got some hooks." He also testified: "* * * I'm familiar with the area where young James A. Miller, Jr., was drowned. I am familiar with the hole or excavation in the Neuse River in that area. I saw a dredge out there dredging sand out of it. I don't remember the date — it was, I would say, somewhere in the neighborhood of a couple of months or three months before this drowning happened. I don't remember the time of the year. It was not in the wintertime, but in relationship to June 22, 1961, it was about two or three months before — probably in March or April. I saw a dredge there and I stopped there a time or two when they were dredging sand across there and talked to some of the men. They were putting dirt across the highway in front of where the hole was dug a little bit east into a marsh out there where it was kind of low. They were building it up."

E. R. Edwards, Jr., a brother-in-law of plaintiff and a witness for him, testified in substance, except when quoted: He heard of the drowning and arrived on the scene about 3:30 p.m. Upon arrival he learned his daughter was with the swimming party, had been found hysterical on the beach, and was O.K., and saw the dead body of Luther Miller lying behind an ambulance. He immediately entered the water of Neuse River to search for the body of plaintiff's intestate. He testified: "Well, from my first observation, when I walked out to the end of the water to look for Al's body [he had formerly testified plaintiff's intestate was called Al by his family and friends], I immediately went over my head and searched this hole out, which was near the shore, and I would say the hole was approximately 15 feet from, in fact, it was 12 feet from the shore. To begin with, I skirted the hole because there was a little jetty formed by the sand approximately 4 or 5 feet at the time. And this was after a mean, low tide of approximately 11 o'clock that day. So there wasn't too much tide and it wasn't too rough and I could see the bottom and I walked out to this little jetty to a point approximately 25 feet, and since I could see the bottom in that area, I turned to the left where the deeper water was. I had to assume it was dark and I entered the hole at that point and searched for the body." He later drew a diagram on a blackboard and testified: "I parked immediately behind the ambulance, walked down on the beach in this direction, over the rock and entered the water at this point, which would be the west end. Now, the sand bar runs parallel with the beach at approximately 125 yards

out and the wave action had formed a little jetty which was visible at mean low tide which is an average tide with good weather conditions making a projection out from the shore about 50 yards. It was real shallow and I walked out on this and turned to the left and entered this hole at this point and, let's see, later we finally found James Miller's body, James Miller, Jr.'s body, at this point, which was within 25 feet of the beach and this is the shore-line here." When Al's body was found, he disconnected the hooks. We do not have a picture of this diagram drawn on the blackboard. There were no markings to keep children from getting into the hole, so far as he saw. The next day he went back and measured the hole. Its length parallel with the beach was 154 feet, its width 92 feet, and its depth 16 feet. There were rocks in the area where the hole was dredged. When children stopped by, they walked down the rocks and out on the jetty to the sand bar to play. Since the State highway was placed there, the area adjacent to the river between the highway and the river has been used by the public for about 15 years.

Plaintiff's evidence shows that where his intestate was drowned, Neuse River is about five miles wide, is a navigable stream, and has an ebb and flow of the tide. In addition, we take judicial notice of the fact that Neuse River in Pamlico County is a large, navigable river. *Hampton v. Pulp Co.*, 223 N.C. 535, 27 S.E. 2d 538; Stansbury, North Carolina Evidence, 2d Ed., Judicial Notice, sec. 14, note 65.

It is settled law in this State that the State of North Carolina owns the land within its territorial limits covered by navigable waters, except as far as private rights in it have been acquired by express grant by the State, and subject to the rights of control of the Federal Government over commerce with foreign nations and among the several states, including its power over navigation. *Land Co. v. Hotel*, 132 N.C. 517, 44 S.E. 39; *R. R. v. Way*, 172 N.C. 774, 90 S.E. 937; *Insurance Co. v. Parmele*, 214 N.C. 63, 197 S.E. 714; 65 C.J.S., Navigable Waters, secs. 89-92 both inclusive. As to whether private rights can be acquired in such lands in this State by prescription or usage is not a question presented here.

According to all the evidence, neither of the defendants are riparian owners, because any lot or land owned by them jointly or separately has a State highway between it and the waters of Neuse River. *Young v. City of Asheville*, 241 N.C. 618, 86 S.E. 2d 408. There is nothing in the record to show that the male defendant had any right to dredge sand from a place covered by the waters of Neuse River.

Plaintiff's complaint alleges that the defendants dredged sand from the bottom of Neuse River, thereby creating near the shore a large hole or excavation; that they negligently failed to place any warning signs

there of such a hazardous condition created by them; that the public generally, including children, had used the sandy beach of Neuse River adjacent to such hole or excavation for many years for bathing, swimming and recreational purposes to the knowledge of defendants; and that his intestate while playing in the shallow water fell into this hole or excavation and was drowned. There is no evidence that the *feme* defendant participated in any way in the dredging of Neuse River or in the creation of a hole or excavation therein. As to her, plaintiff has *allegata*, but no *probata*. The trial court properly nonsuited the case as to her.

It is a fundamental principle that the only negligence of legal importance is negligence which proximately causes or contributes to the death or injury under judicial investigation. *McNair v. Richardson,* 244 N.C. 65, 92 S.E. 2d 459; *Cox v. Freight Lines* and *Matthews v. Freight Lines,* 236 N.C. 72, 72 S.E. 2d 25; *Smith v. Whitley,* 223 N.C. 534, 27 S.E. 2d 442; *Byrd v. Express Co.,* 139 N.C. 273, 51 S.E. 851.

There is no evidence as to when during the day or at what place plaintiff's intestate, a boy seven years and four days old, entered the waters of Neuse River or what he did when he entered the water. There is no evidence as to where he was in the river when he drowned or at what time he drowned. His father testified: "I don't personally know whether he could swim, but he was taking swimming lessons at that time at Camp Don Lee." The complaint alleges he was "unable to swim."

Alton Lee testified to the effect that when he first saw the boy's dead body it was in the river about 200 or 250 feet from the State highway and between 100 and 150 yards east of Dawson's Creek bridge. L. L. Wise testified: "A group of people took ahold of the net and walked around the hole and they pulled it across and didn't find the boy — the child — that way, and then they got some hooks." E. R. Edwards, Jr., testified: "I entered the hole at that point and searched for the body." The boy's body was taken out of the river by hooks operated by Messrs. Barkley and Hudson. Hudson is now dead. Barkley did not testify. It is not clear from the evidence where the boy's body was in the river when it was seized by the hooks. Even if the boy's body was seized by the hooks in a hole or excavation created by the male defendant's dredging operations, it is conjecture to assert that the place where the boy's body was hooked and brought to the surface of the water was where he drowned, for his body may have been carried there from the place of his drowning by the current of Neuse River or by the ebb and flow of the tide.

Plaintiff has evidence to show that the male defendant a few months before 22 June 1961 was dredging sand from the bed of Neuse River,

creating a hole or excavation, but there is no evidence in the record before us to warrant a reasonable inference that plaintiff's intestate got into this hole or excavation and was drowned, or that this hole or excavation had anything to do with his untimely death. In brief, plaintiff has no evidence to show a causal connection between the hole or excavation created in the bed of Neuse River by the male defendant and his failure to post any warning sign in the vicinity, and the drowning of his intestate.

"This Court said in *Brown v. Kinsey*, 81 N.C. 245: 'The rule is well settled that if there be no evidence, or if the evidence be so slight as not reasonably to warrant the inference of the fact in issue or furnish more than materials for a mere conjecture, the Court will not leave the issue to be passed on by the jury.' This has been quoted with approval in *Byrd v. Express Co., supra* [139 N.C. 273, 51 S.E. 851], and in *Poovey v. Sugar Co.*, 191 N.C. 722, 133 S.E. 12, where Brogden, J., the writer of the opinion, adds in apt and accurate words: 'This rule is both just and sound. Any other interpretation of the law would unloose a jury to wander aimlessly in the fields of speculation'." *Lane v. Bryan*, 246 N.C. 108, 97 S.E. 2d 411. "A resort to a choice of possibilities is guesswork, not decision." *Parker v. Wilson*, 247 N.C. 47, 100 S.E. 2d 258.

The trial court correctly entered a judgment of compulsory nonsuit of plaintiff's action against both defendants.

Affirmed.