IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-962

Filed: 31 December 2020

New Hanover County No. 17 CVS 003743

WILLIAM E. BENSON, III, and wife, MONIQUE L. RIBANDO, Plaintiffs,

vs.

R. LEE PREVOST, and wife SCHARME S. PREVOST, Defendants and Third-Party Plaintiffs,

vs.

MICHAEL S. BURNHAM, DANIEL SMITH, and wife, DENISE B. SMITH, Third-Party Defendants.

Appeal by Plaintiffs from order entered 25 April 2019, order entered 23 May 2019, and order entered 29 May 2019 by Judge Paul M. Quinn in New Hanover County Superior Court. Heard in the Court of Appeals 25 August 2020.

> *Fox Rothschild LLP, by Robert H. Edmunds, Jr., and Elizabeth Brooks Scherer for Plaintiff.*
>
> *Law Offices of G. Grady Richardson, Jr., P.C., by G. Grady Richardson, Jr., and Jennifer L. Carpenter, for Plaintiff.*
>
> *Shipman & Wright, LLP, by Gary K. Shipman for Defendants.*
>
> *Block, Crouch, Keeter, Behm, & Sayed, LLP, by Auley M. Crouch, III, for Third-Party Defendants.*

DILLON, Judge.

I. Background

This matter concerns a real property dispute between next-door neighbors who purchased their lots from Third-Party Defendants (the "Developers"). Developers originally owned the two lots and a third waterfront lots (Lots 1-3) at Wrightsville Beach, and adjacent dock with three boat slips (Slips A-C).

In 2015, Defendants R. Lee Prevost and Scharme S. Prevost purchased Lot 2 from the Developers. The conveyance also included exclusive use of a specific boat slip, Slip C, and the use of a driveway easement located on Lot 1 next door.

The following year, in 2016, Plaintiffs William E. Benson and Monique L. Ribando purchased Lot 1 from an affiliate of Developers,[1] the lot which was burdened by the driveway easement. The conveyance also included exclusive use of Slip A.

A dispute subsequently arose between the parties regarding Defendants' parking of vehicles within the driveway easement. Also, a dispute arose regarding which party owned which boat slip.

Plaintiffs brought this action against Defendants to resolve their two disputes. After a hearing on the matter, the trial court entered summary judgment in favor of Defendants on both issues and awarded Defendants attorney's fees. Plaintiffs appeal.

## II. Analysis

---

[1] In September 2015, a month after selling Lot 2/Slip C to Defendants, the Developers conveyed Lot 1/Slip A to an affiliate entity in anticipation of building the home on Lot 1. This affiliate entity conveyed Lot 1/Slip A to Plaintiffs. However, for ease of reading, the "Developers" refers either to the Developer or its affiliate, depending on the context.

Summary judgment is appropriate when there is no genuine issue of material fact; and we review a summary judgment order *de novo*. *Daughtridge v. Tanager Land, LLC*, 373 N.C. 182, 186, 835 S.E.2d 411, 415 (2019); N.C. Gen. Stat. § 1A-1, Rule 56(c) (2015). We address the two property issues and the attorney's fee issue in turn.

A. Driveway Easement

The parties dispute the "scope" of the parties' rights to use the driveway easement (the "Easement") located on Lot 1.

In 2015, just prior to conveying any of the lots, the Developers recorded the Map below, which depicts the driveway easement shaded on Lot 1.



The recording of this Map did not actually convey anything, as both the dominant estate (Lot 2) and the servient estate (Lot 1) were still held by the same owner.

On 28 August 2015, shortly after Developers recorded the Map, they conveyed Lot 2 (with an existing home as depicted on the Map) to Defendants. The deed contained the following language, which also granted Defendants rights to the Easement depicted on the recorded Map:

> Together with and subject to a Driveway Easement, shown as "Proposed Driveway Easement Area = 1050 S.F." [as recorded on the Map].

At the time Defendants purchased Lot 2, Lot 1 had not yet been developed. The garage area of the existing home on Lot 2 faced (and continues to face) the Easement, as shown in the photographs below. (These photos were offered as exhibits at the summary judgment hearing and were taken years later, after Lot 1 had been developed. The area depicted as the "Driveway Easement" in these photos do not appear to match the Easement as depicted on the Map.)

In 2016, the Developers constructed a home on Lot 1 and sold it to Plaintiffs. The photos show that Lot 1, as developed, contains a privacy wall adjacent to the part of the Easement that is now paved, a "back gate" which leads into Lot 1's back yard, and a "side gate" which accesses the home on Lot 1. The Developers built the home on Lot 1 with the garage on the side of the home opposite the Easement and is accessed by a different driveway (unrelated to the dispute), also on Lot 1.





Since purchasing Lot 2 in 2015, Defendants have made use of the Easement to access their garages and parking pad on Lot 2. They have also occasionally parked

cars on the Easement. Sometime after purchasing Lot 1, Plaintiffs began protesting Defendants' parking of vehicles within the Easement, contending it blocks their ability to access their back gate. For their part, Defendants contend that Plaintiffs have no right to drive vehicles on the Easement to access the back gate, as this use would interfere with Defendants' Easement rights.

The trial court entered summary judgment in favor of Defendants on this issue. The court determined that Defendants and their successors "are entitled to make reasonable use of the [ ] Easement [as recorded on the Map]" and that the parking of vehicles is a reasonable use. Further, the trial court determined that Plaintiffs and their successors could only use the Easement to access their side and back gates by foot and not by a vehicle. For the below reasoning, we affirm as modified herein.

An easement is an interest in land and is subject to the statute of frauds. *See* N.C. Gen. Stat. § 22-2 (2015). An easement, like any other conveyance, "is to be construed in such a way as to effectuate the intention of the parties *as gathered from the entire instrument*" and not from detached portions. *Higdon v. Davis*, 315 N.C. 208, 215-16, 337 S.E.2d 543, 547 (1985) (emphasis added).

Here, the instrument defining the Easement is the recorded Map, referenced in the recorded deed to Defendants. *See Collins v. Land Co.*, 128 N.C. 563, 565, 39 S.E. 21, 22 (1901) ("[A] map or plat, referred to in a deed, becomes a part of the deed, as if it were written therein[.]"). When Plaintiffs purchased Lot 1, they took title

subject to Defendants' Easement rights as recorded. *Borders v. Yarbrough*, 237 N.C. 540, 542, 75 S.E.2d 541, 543 (1953) ("Grantees take title to lands subject to duly recorded easements which have been granted by their predecessors in title.").

The Map referenced in the Developers deed to Defendants unambiguously marks *the specific location* of the Easement. The Easement is depicted as the shaded area on Lot 1, adjacent to its shared property line with Lot 2. The Map describes the shaded area to be "Area 1,060 S.F.", which appears to be accurate: the area forms a trapezoid, with the average length from the street being a slightly over fifty (50) feet and the average width being a slightly over twenty (20) feet. Neither party makes any argument that the location of the Easement is not as described on the Map or has been relocated. *See Cooke v. Wake Electric*, 245 N.C. 453, 458, 96 S.E.2d 351, 354 (1957). Therefore, the location of the Easement is as described in the Map.

There is no clear language, however, defining *the scope* of Defendants' rights to use the Easement beyond the language labeling the shaded area on the Map as a "Proposed Driveway Easement" and the reference in the deed Defendants conveying the Easement rights as a "Driveway Easement."

Our task is to determine whether the intent of the parties regarding the Easement's scope – specifically whether Defendants can park vehicles in the Easement – can be gleaned from these recorded instruments. We note that our Court has instructed that if the language in an easement is ambiguous as to its scope:

> [T]he scope may be determined by reference to the attendant circumstances, the situation of the parties, and by the acts of the parties in the use of the easement immediately following the grant [but that] if the conveyance is silent as to the scope of the easement, extrinsic evidence is inadmissible as to the scope or extent of the easement. However, in the latter situation, a reasonable use is implied.

*Swaim v. Simpson*, 120 N.C. App. 863, 864, 463 S.E.2d 785, 786 (1995). Also, our Supreme Court has instructed that an easement extends to all "uses directly or incidentally conducive to the advancement of the purpose for which the right of way was acquired, and the owner retains merely the title in fee, carrying the right to make such use as in no way interferes with the full and free exercise of the easement." *Light Co. v. Bowman*, 229 N.C. 682, 688, 51 S.E.2d 191, 195 (1949) (citation omitted).

It is unambiguous that the purpose of the easement is to allow Defendants to use the Easement as a "driveway." What is less clear is whether "driveway" use includes the right to park vehicles in the Easement or simply the right to use the driveway for ingress and egress between the road and Lot 2. There is no express language which restricts the use of the driveway easement for "ingress and egress." We note that many driveways are used also to park cars, while others are used generally only for just ingress and egress based on their width.

Looking at the Map *as a whole*, we conclude that the trial court correctly determined that the scope of Defendants' rights includes the right to park vehicles in parts of the Easement area. We are persuaded in large part by the fact that the

Easement, as defined in the Map, is on average over twenty (20) feet wide. We are also persuaded by the fact that the Easement is short and immediately adjacent (close to) Defendants' home, as shown on the Map. A narrower driveway easement would suggest an intent by the grantor that it be used only for ingress and egress. But the creation of a driveway easement that is approximately twenty (20) feet wide to be used by the owner of a vacation home, especially where the easement is close to the home, suggests an intent that the "driveway" use also includes the right to park cars, at least on occasion. This right, though, does not extend to the parking of cars in a way which obstructs the entire width of the Easement *as shown on the Map*, as such use would prevent the owner of the servient estate an opportunity to make reasonable use of that part of their property.

There is plenty of room within the Easement as shown on the Map for Defendants to park vehicles and still leave room for Plaintiffs to use the Easement for their ingress and egress to the back part of Lot 1. We note, however, that it *appears* from the photos that *after* conveying Easement rights to Defendants, the Developers placed permanent obstructions in the Easement when they developed the house on Lot 1. That is, the easement area as depicted in the photos *appears* smaller than the Easement depicted on the Map. For instance, the boundary at the end of the Easement is depicted on the Map as being approximately fourteen (14) feet long. That boundary as depicted on the aerial photo, though, appears much shorter

(comparing it to the width of the truck in the photo). It *appears* from the photos that after conveying Easement rights to Defendant, the Developers built the privacy wall within the Easement, an area the owner of Lot 1 could have used for ingress and egress.

We affirm the trial court's determination that the parking of cars by Defendants in the Easement is generally allowed. Our Supreme Court instructs, though, that "[t]he reasonable use and enjoyment of an easement is to be determined in the light of the situation of the property and the surrounding circumstances [and] what is a reasonable use is a question of fact [for a jury]." *Shingleton v. State*, 260 N.C. 451, 457, 133 S.E.2d 183, 187 (1963). Therefore, the parking of cars by Defendants in the Easement must be reasonable. And it may be that a jury, for instance, may deem the parking of cars by Defendant in the Easement, while leaving the parking pad and garages on Lot 2 vacant, is an unreasonable use. (The trial court made no ruling regarding the extent that Defendants may utilize the Easement for parking, as such questions *might* be for a jury to resolve, based on specific facts.)

We modify the trial court's determination regarding Plaintiffs' rights to use the Easement, striking the portion that Plaintiffs may *never* drive a vehicle over the Easement to access the back of their property, but only may use the Easement for pedestrian traffic. To be sure, Plaintiffs may not use the Easement in a way that interferes with the rights of Defendants to use the Easement for ingress and egress

and to park vehicles. However, Plaintiffs, as the owner of the servient estate, "may [still] use the land in any manner and for any purpose which does not interfere with the full and free use of the easement[.]" *Harris v. Southern Railway Co.*, 100 N.C. App. 373, 378, 396 S.E.2d 623, 626 (1990). There may be instances where using the Easement for vehicle ingress and egress to access the back or side gate of Lot 1 would not interfere with Defendants' enjoyment of their Easement rights. For instance, such use may be reasonable during times when Defendants do not need to park cars in the Easement area.[2] Accordingly, we reverse that portion of the order and hold that Plaintiffs may use the land in any manner which does not interfere with Defendants' enjoyment of the Easement, which *may* include at times, the right to drive vehicles on the Easement to access their back and side gates.

## B. Boat Slips

The second issue involves a dispute between Plaintiffs and Defendants as to the ownership of Slip A and Slip C. Though Slip C was deeded to Defendants by the Developers, Defendants claim that this was a mistake, a mistake which Plaintiffs knew about when they purchased Lot 1/Slip A from the Developers.

The timeline relevant to this dispute is as follows:

---

[2] We note that, assuming the privacy fence is actually within the Easement, Defendants have made no argument or claim that the use by Plaintiffs' predecessor in title of Easement to construct the fence interferes with their ability to use the Easement.

At the beginning of the summer of 2015, the Developers owned three adjacent waterfront lots, Lots 1-3. Appurtenant to the entire waterfront of the property is a dock and three boat slips, Slips A-C. Slip A was the most desirable slip as it had a lift already installed.

In July 2015, Defendants entered into a written contract to purchase Lot 2, with exclusive rights to Slip A, the one with the boat lift.

On 25 August 2015, before closing on the sale of Lot 2 with Defendants, the Developers recorded covenants which stated, "Boat Slip A has been made appurtenant to and runs with the land of Lot 1 . . . Boat Slip C has been made appurtenant to and runs with the land of Lot 2." This recorded instrument conflicts with the July purchase contract.

On 28 August 2015, Defendants closed their purchase of Lot 2 from the Developers. The deed of conveyance provided that Defendants were receiving Lot 2 "[t]ogether with Boat Slip C[,]" which was consistent with the covenants recorded days before, but which conflicted with Defendants' purchase contract. Defendants, though, began using Slip A, the boat slip with a lift.

In 2016, the Developers sold Lot 1 to Plaintiffs. There is evidence that before closing Plaintiffs believed that they were getting Slip C, the inferior slip. However, they came to learn about the supposed error in the conveyance of Slip C to Defendants. But Plaintiffs told the Developers at closing that they wanted to "keep

the deed [conveying Slip A to them] as it was." Accordingly, the deed conveyed Lot 1 to Plaintiffs, together with "the exclusive use of Slip A[.]"

There is evidence that after closing, Plaintiffs made use of the inferior Slip C, as Defendants were already making use of Slip A. However, when Defendants refused to stop parking cars in the Easement, Plaintiffs began protesting that Defendants were using the wrong boat slip.

Plaintiffs brought this action, not only to determine the parties' rights with respect to the Easement, but also for an order declaring them to be the owners of Slip A. The trial court, though, granted summary judgment in favor of Defendants on this issue. For the reasons stated below, we reverse the trial court on this issue.

With the passage of the Connor Act, our General Assembly made North Carolina a pure race state. N.C. Gen. Stat. § 47-18(a) (2015). Under our pure race recording statute, "[a]s between two purchasers for value of the same interest in land, the one whose deed is first registered acquires title." *Bourne v. Lay & Co.*, 264 N.C. 33, 35, 140 S.E.2d 769, 771 (1965).

While land *under* navigable waters in North Carolina belong to the State of North Carolina, *see Miller v. Coppage*, 261 N.C. 430, 435, 135 S.E.2d 1, 5 (1964), an interest in land that abuts navigable water includes certain littoral or riparian rights to that navigable water, *see Jones v. Turlington*, 243 N.C. 681, 683, 92 S.E.2d 75, 77

(1956). These rights may include the right to construct docks, piers, and the like to access the water:

> A littoral proprietor and a riparian owner, as universally conceded, has a *qualified property* in the water-frontage belonging, by nature, to their land, the chief advantage growing out of the appurtenant estate in the submerged land being *the right of access* over an extension of their water fronts to natural water, and the right to construct wharves, piers, or landings, subject to such general rules and regulations as the Legislature, in the exercise of its powers, may prescribe for the protection of public rights in rivers or navigable waters.

*Capune v. Robbins*, 273 N.C. 581, 588, 160 S.E.2d 881, 886 (1968) (citations and quotation marks omitted). We hold that access to boat slips is a littoral or riparian right and is therefore an interest in land.

It may be that as Plaintiffs were closing their purchase of Lot 1 in 2016, they were aware that the Developers had intended to convey Slip A to Defendant. But there was no deed in the Developers chain of title to indicate that they had yet parted with Slip A. And Defendants had not filed any litigation to reform their deed from the Developers. *Hill v. Pinelawn Memorial Park, Inc.*, 304 N.C. 159, 163, 165, 282 S.E.2d 779, 782, 783 (1981) (finding "[i]f [a purchaser] finds no record of [a prior conveyance], even if he knows there has been a prior conveyance, he may record his deed with the assurance that his title will prevail" and "[w]hile actual notice of another unrecorded conveyance does not preclude the status of innocent purchaser

for value, actual notice of pending litigation affecting title to the property does preclude such status.").

Additionally, Defendants contend that Plaintiffs did not purchase the rights to Slip A for value and thus are not protected by the Connor Act. However, the record shows that Plaintiffs paid $1.9 million dollars for Lot 2, including use of Slip A. For instance, the deed from Developers shows revenue stamps reflecting that this price was paid. The parties conceded this point, and there is nothing to indicate that Slip A was given to them. At the very least, Plaintiffs gave up their "right" to receive Slip C at closing (that they had originally been promised) to receive Slip A, and Slip C has significant value. *King v. McRacken*, 168 N.C. 621, 624, 84 S.E. 1027, 1029 (1915) ("The party assuming to be a purchaser for valuable consideration must prove a fair consideration, not up to the full price, but a price paid which would not cause surprise or make any one exclaim, 'He got the land for nothing!' ").

We are unpersuaded by the Developers' argument concerning their evidence that Plaintiffs orally promised that they would trade boat slips after their closing, to correct the mistake made when Developers conveyed the wrong slip to Defendants the year before. The evidence is conflicting, and there is nothing in writing which states that they made any such promise. Defendants could have protected themselves by filing an action against the Developers, and then giving notice to the

public of this action by recording a notice of *lis pendens* anytime prior to Plaintiffs' purchase of Lot 1/Slip A, ten (10) months later.  But they did not.

Developers could have done the same before closing with Plaintiffs, but they did not.  They could have required Plaintiffs to enter some express agreement to make the transfer.  But they did not.

## C. Attorney's Fees

Finally, Plaintiffs appeal the award of attorney's fees to Defendants and the Developers.  As we have reversed the trial court's order granting summary judgment in favor of Defendants and Developers on the issue of the boat slips, we must vacate the trial court's order granting these parties attorney's fees as they are no longer a prevailing party.

## III. Conclusion

This matter concerns a recorded easement and conveyances of boat slips between next door neighbors who never entered into a contract with each other, but who purchased their lots from a common owner.  There is conflicting evidence about what might have been said at various times regarding these instruments, but we must remember:

> There is no other stake for which men will play so desperately. In men and nations there is an insatiable appetite for lands, for the defence or acquisition of which money and even blood sometimes are poured out like water. The evidence of land-title ought to be as sure as human ingenuity can make it. But if left in parol, nothing

> is more uncertain, whilst the temptations to perjury are proportioned to the magnitude of the interest.
>
> The infirmity of memory . . . the honest mistakes of witnesses, and the mis-understanding of parties, these are all elements of confusion and discord which ought to be excluded[.]

*Moore v. Small*, 19 Pa. 461, 465 (1852).

Here, regarding the Easement, we affirm in part and reverse in part. Defendants may make reasonable use of the Easement, which may include the parking of cars within the Easement area. Plaintiffs may make use of the Easement which does not interfere with Defendants' rights to the Easement. This use may include, at times, the right to use the Easement for ingress and egress by vehicles.

Regarding the boat slips, we reverse, specifically the portion of the order directing that the deeds conveying Slip A to Plaintiffs and Slip C be reformed. We conclude that Plaintiffs' interest in Slip A is superior to Defendants' claim.

Regarding the attorney's fees, we reverse. Defendants are not the prevailing party, such that they are entitled to attorney's fees.

AFFIRMED IN PART, REVERSED IN PART, MODIFIED IN PART.

Chief Judge MCGEE and Judge MURPHY concur.