IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-208

No. COA19-962-2

Filed 18 May 2021

New Hanover County No. 17 CVS 003743

WILLIAM E. BENSON, III, and wife, MONIQUE L. RIBANDO, Plaintiffs,

vs.

R. LEE PREVOST, and wife SCHARME S. PREVOST, Defendants and Third-Party Plaintiffs,

vs.

MICHAEL S. BURNHAM, DANIEL SMITH, and wife, DENISE B. SMITH, Third-Party Defendants.

Appeal by Plaintiffs from orders entered 25 April 2019, 23 May 2019, and 29 May 2019, by Judge Paul M. Quinn in New Hanover County Superior Court. Heard in the Court of Appeals 25 August 2020. Original opinion filed on 31 December 2020 was withdrawn and Motion to Reconsider granted on 4 March 2021.

Fox Rothschild LLP, by Robert H. Edmunds, Jr., and Elizabeth Brooks Scherer, and Law Offices of G. Grady Richardson, Jr., P.C., by G. Grady Richardson, Jr., and Jennifer L. Carpenter, for Plaintiff.

Shipman & Wright, LLP, by Gary K. Shipman for Defendants.

Block, Crouch, Keeter, Behm, & Sayed, LLP, by Auley M. Crouch, III, for Third-Party Defendants.

DILLON, Judge.

## I. Background

This matter involves a real property dispute between next-door neighbors who own two lots within a three-lot subdivision originally developed by Third-Party Defendants (the "Developers"). The Developers developed three adjacent waterfront lots (Lots 1-3) at Wrightsville Beach, along with a dock extending into the water from the lots. The dock leads to three boat slips (Slips A-C). Prior to selling any lot, the Developers filed a map depicting a driveway easement over a portion of Lot 1 for the benefit of Lot 2. The Developers eventually sold each lot, with each lot owner entitled to use a specific boat slip. This matter concerns two disputes between the current owners of Lot 1 and Lot 2 regarding the scope of the driveway easement and ownership of boat slips.

Defendants R. Lee Prevost and Scharme S. Prevost own Lot 2. They purchased Lot 2 from the Developers in 2015. The conveyance included rights to the driveway easement located on Lot 1 and also exclusive use of Slip C. There is evidence that Defendants *thought* they were receiving Slip A. Slip A is the superior boat slip in that it had been improved with a boat lift, whereas Slip C had not.

¶ 3    The following year, in 2016, Plaintiffs William E. Benson and Monique L. Ribando purchased Lot 1 from the Developers.[1]  Plaintiffs' interest in Lot 1 was, of course, *subject to* the driveway easement in favor of Defendants as owners of Lot 2. Though Plaintiffs' written contract with the Developers indicated that they would also receive Slip C (the boat slip that the Developers had already, though perhaps inadvertently, conveyed to Defendants the prior year) at closing, Plaintiffs were deeded exclusive use of Slip A, the slip with the boat lift.

¶ 4    A dispute subsequently arose when Plaintiffs noticed that Defendants were *parking* vehicles within the driveway easement on Plaintiffs' Lot 1 rather than simply using the easement for ingress and egress to Lot 2.  Also, a dispute arose regarding which party owned which boat slip.

¶ 5    Plaintiffs brought this action to resolve the two disputes.  After a hearing on the matter, the trial court entered summary judgment in favor of Defendants on both issues, concluding that Defendants could park cars within the driveway easement and that Defendants were the rightful owners of Slip A—the better boat slip—

---

[1] An affiliate of the Developers actually conveyed Lot 1 to Plaintiffs.  In September 2015, a month after selling Lot 2/Slip C to Defendants, the Developers conveyed Lot 1/Slip A to an affiliate entity in anticipation of building the home on Lot 1.  This affiliate entity conveyed Lot 1/Slip A to Plaintiffs.  However, for ease of reading, the "Developers" refers either to the Developers or its affiliate, depending on the context.

notwithstanding the deeds.  The trial court also awarded Defendants attorney's fees.

Plaintiffs appeal.

## II. Analysis

Summary judgment is appropriate when there is no genuine issue of material fact; and we review a summary judgment order *de novo*.  *Daughtridge v. Tanager Land, LLC*, 373 N.C. 182, 186, 835 S.E.2d 411, 415 (2019); N.C. Gen. Stat. § 1A-1, Rule 56(c) (2015).  We address the two property issues and the costs and attorney's fees issue in turn.

## A. Driveway Easement

The parties dispute the "scope" of the parties' rights to use the driveway easement (the "Easement") located on Lot 1.

¶ 8     In 2015, just prior to conveying any of the lots, the Developers recorded the map below (the "Map"), which depicts the driveway easement shaded on Lot 1.



The recording of this Map did not actually convey anything, as both the dominant estate (Lot 2) and the servient estate (Lot 1) were still held by the same owner.

¶ 9     On 28 August 2015, shortly after the Developers recorded the Map, the Developers conveyed Lot 2 (the lot on the right with an existing home as depicted on

the Map) to Defendants. The deed contained the following language, which also granted Defendants rights to the Easement depicted on the recorded Map:

> Together with and subject to a Driveway Easement [located on Lot 1], shown as "Proposed Driveway Easement Area = 1050 S.F." [as recorded on the Map].

¶ 10     At the time Defendants purchased Lot 2, Lot 1 had not yet been developed. The garage area of the existing home on Lot 2 faced (and continues to face) the Easement, as shown in the photographs below. These photos were offered as exhibits at the summary judgment hearing and were taken years later, after Lot 1 had been fully developed. The area depicted as the "Driveway Easement" in these photos does not appear to fully cover the Easement area as depicted on the Map.

¶ 11     In 2016, the Developers constructed a home on Lot 1 and sold it to Plaintiffs. Developers had originally planned to design a home on Lot 1 such that the homeowner would also use the Driveway Easement to access the garage area. However, the Developers ultimately decided on a design with a garage on the other side, opposite the Easement, accessed by a different driveway (unrelated to the dispute). The photos below show that Lot 1, as developed, contains a privacy wall adjacent to the part of the Easement that is now paved, a "back gate" which leads into Lot 1's back yard, and a "side gate" which accesses the home on Lot 1.





¶ 12 Since purchasing Lot 2 in 2015, Defendants have made use of the Easement to access their garages and parking pad on Lot 2. They have also occasionally parked cars within the Easement. Sometime after purchasing Lot 1, Plaintiffs began protesting Defendants' parking of vehicles within the Easement, contending it blocks their ability to access their back gate. For their part, Defendants contend that Plaintiffs have no right to drive vehicles on the Easement to access the back gate, as this use would interfere with Defendants' Easement rights.

¶ 13 The trial court entered summary judgment in favor of Defendants on this issue. The court determined that Defendants and their successors "are entitled to make reasonable use of the [ ] Easement [as recorded on the Map]" and that the parking of vehicles is a reasonable use. Further, the trial court determined that Plaintiffs and their successors could only use the Easement to access their side and back gates by foot and not by a vehicle. For the reasons below, we affirm as modified herein.

¶ 14 An easement is an interest in land and is subject to the statute of frauds. *See* N.C. Gen. Stat. § 22-2 (2015). An easement, like any other conveyance, "is to be construed in such a way as to effectuate the intention of the parties *as gathered from the entire instrument*" and not from detached portions. *Higdon v. Davis*, 315 N.C. 208, 215-16, 337 S.E.2d 543, 547 (1985) (emphasis added).

¶ 15 Here, the location of the Easement in favor of Defendants is expressly defined by the Map, referenced in the recorded deed from the Developers to Defendants. *See*

*Collins v. Land Co.*, 128 N.C. 563, 565, 39 S.E. 21, 22 (1901) ("[A] map or plat, referred to in a deed, becomes a part of the deed as if it were written therein[.]"). When Plaintiffs purchased Lot 1, they took title subject to Defendants' Easement rights as recorded. *Borders v. Yarbrough*, 237 N.C. 540, 542, 75 S.E.2d 541, 543 (1953) ("Grantees take title to lands subject to duly recorded easements which have been granted by their predecessors in title.").

¶ 16    The Map referenced in the Developers' deed to Defendants unambiguously marks *the specific location* of the Easement. The Easement is depicted as the shaded area on Lot 1, adjacent to its shared property line with Lot 2. The Map describes the shaded area to be "Area 1,060 S.F.", which appears to be accurate: the area forms a trapezoid, with the average length from the street being slightly over fifty (50) feet and the average width being slightly over twenty (20) feet. Neither party makes any argument that the location of the Easement is not as described on the Map or has been relocated. *See Cooke v. Electric Membership Corp.*, 245 N.C. 453, 458, 96 S.E.2d 351, 354 (1957). Therefore, the location of the Easement is as described on the Map.

¶ 17    There is no clear language, however, defining *the scope* of Defendants' rights to use the Easement beyond the language labeling the shaded area on the Map as a "Proposed Driveway Easement" and the reference in the deed conveying the Easement rights as a "Driveway Easement."

¶ 18 Our task is to determine whether the intent of the parties regarding the Easement's scope—specifically whether the scope included the right to park vehicles in the Easement—can be gleaned from these recorded instruments. We note that our Court has instructed that if the language in an easement is ambiguous as to its scope:

> [T]he scope may be determined by reference to the attendant circumstances, the situation of the parties, and by the acts of the parties in the use of the easement immediately following the grant [but that] if the conveyance is silent as to the scope of the easement, extrinsic evidence is inadmissible as to the scope or extent of the easement. However, in the latter situation, a reasonable use is implied.

*Swaim v. Simpson*, 120 N.C. App. 863, 864, 463 S.E.2d 785, 786-87 (1995). Also, our Supreme Court has instructed that an easement extends to all "uses directly or incidentally conducive to the advancement of the purpose for which the right of way was acquired, and the owner retains merely the title in fee, carrying the right to make such use as in no way interferes with the full and free exercise of the easement." *Light Co. v. Bowman*, 229 N.C. 682, 688, 51 S.E.2d 191, 195 (1949) (citation omitted).

¶ 19 It is unambiguous that the purpose of the easement is to allow Defendants to use the Easement as a "driveway." What is less clear is whether "driveway" use includes the right to park vehicles in the Easement or simply the right to use the driveway for ingress and egress between the public road and Lot 2. There is no express language which restricts the use of the driveway easement for "ingress and

egress." We note that many driveways are used by their owners to park cars, while others are used generally only for just ingress and egress.

¶ 20    Looking at the Map *as a whole,* we conclude that the trial court correctly determined that the scope of Defendants' rights includes the right to park vehicles in parts of the Easement area. We are persuaded in large part by the fact that the Easement area, *as defined on the Map*, is on average over twenty (20) feet wide. We are also persuaded by the fact that the Easement is short in length and located immediately adjacent to Defendants' home, as shown on the Map. A narrower driveway easement would suggest an intent by the grantor that its scope be limited to ingress and egress. But the creation of a driveway easement that is approximately twenty (20) feet wide to be used by the owner of a vacation home, especially where the easement is close to the home, suggests an intent that the "driveway" use also include the right to park cars, at least on occasion. This right, though, does not extend to the parking of cars in a way that obstructs the entire width of the Easement *as shown on the Map*, as such use would deprive the owners of the servient estate (Lot 1) of the opportunity to make reasonable use of that part of their property.

¶ 21    There is plenty of room within the Easement *as depicted on the Map* for Defendants to park vehicles and still leave room for Plaintiffs to use the Easement for their ingress and egress to the back part of Lot 1. We note, however, that it *appears* from the photos that *after* conveying Easement rights to Defendants, the

Developers placed permanent obstructions within the Easement area, as depicted on the Map, when they developed the house on Lot 1. That is, the easement area as depicted in the photos *appears* smaller than the Easement depicted on the Map. For instance, the boundary at the end of the Easement is depicted on the Map as being approximately fourteen (14) feet long. That boundary as depicted on the aerial photo, though, appears much shorter (comparing it to the width of the truck in the photo). It *appears* from the photos that after conveying Easement rights to Defendants, the Developers built the privacy wall within the Easement, an area the owner of Lot 1 could have used for its own ingress and egress to other portions of Lot 1.

¶ 22    We affirm the trial court's determination that the parking of cars by Defendants in the Easement is generally allowed. Our Supreme Court instructs, though, that "[t]he reasonable use and enjoyment of an easement is to be determined in the light of the situation of the property and the surrounding circumstances [and] what is a reasonable use is a question of fact [for a jury]." *Shingleton v. State*, 260 N.C. 451, 457, 133 S.E.2d 183, 187 (1963). Therefore, the parking of cars by Defendants in the Easement must be reasonable. And it may be that a jury, for instance, may deem Defendants' parking of cars in the Easement, while leaving the parking pad and garages on Lot 2 vacant, an unreasonable use. (The trial court made no ruling regarding the extent that Defendants may utilize the Easement for parking, as such questions *might* be for a jury to resolve, based on specific facts.)

¶ 23        We modify the trial court's determination regarding Plaintiffs' rights to use the Easement, striking the portion that Plaintiffs may *never* drive a vehicle over the Easement to access the back of their property, but may only use the Easement for pedestrian traffic.  To be sure, Plaintiffs may not use the Easement in a way that interferes with the rights of Defendants to use the Easement for ingress and egress and to park vehicles.  However, Plaintiffs, as the owners of the servient estate, "may [still] use the land in any manner and for any purpose which does not interfere with the full and free use of the easement[.]"  *Harris v. Southern Railway Co.*, 100 N.C. App. 373, 378, 396 S.E.2d 623, 626 (1990).  There may be instances where using the Easement for vehicle ingress and egress to access the back or side gate of Lot 1 would not interfere with Defendants' enjoyment of their Easement rights.  For instance, such use may be reasonable during times when Defendants are not parking cars in the Easement area.[2]  Accordingly, we reverse that portion of the order and hold that Plaintiffs may use the land in any manner which does not interfere with Defendants' enjoyment of the Easement, which *may* include at times, the right to drive vehicles on the Easement to access their back and side gates.

B. Boat Slips

---

[2] We note that, assuming the privacy fence is actually within the Easement, Defendants have made no argument or claim that the decision by Plaintiffs' predecessor in title to construct the fence interferes with their ability to use the Easement.

¶ 24        The second issue involves a dispute between Plaintiffs and Defendants as to the ownership of Slip A and Slip C. Though Slip C was deeded to Defendants by the Developers in 2015, Defendants claim that this was a mistake. Defendants do not contend that Plaintiffs, who did not purchase Lot 1 until the following year, knew about the mistake when the Developers "mistakenly" conveyed Slip C to Defendants or that Plaintiffs were otherwise involved at that time. But Defendants do claim, and there is evidence to show, that Plaintiffs came to know that a mistake might have been made when they closed their purchase of Lot 1/Slip A with the Developers.

¶ 25        The timeline relevant to this dispute is as follows:

¶ 26        In July 2015, Defendants entered into a written contract to purchase Lot 2, with exclusive rights to Slip A, the one with the boat lift.

¶ 27        On 25 August 2015, before closing on the sale of Lot 2 with Defendants, the Developers recorded covenants which stated, "Boat Slip A has been made appurtenant to and runs with the land of Lot 1 [and NOT Lot 2] . . . Boat Slip C has been made appurtenant to and runs with the land of Lot 2." This recorded instrument conflicts with the July purchase contract.

¶ 28        Three days later, on 28 August 2015, Defendants closed their purchase of Lot 2 with the Developers. The deed of conveyance provided that Defendants were receiving Lot 2 "[t]ogether with Boat Slip C[,]" which was consistent with the covenants recorded days before, but which conflicted with Defendants' purchase

contract.    Defendants, though, began using Slip A, the boat slip with a lift, notwithstanding that they had been deeded Slip C.

¶ 29        In 2016, the Developers sold Lot 1 to Plaintiffs.  There is evidence that before closing, Plaintiffs believed that they were getting Slip C, the inferior slip.  However, they came to learn that Developers had already conveyed Slip C to Defendants, though *perhaps* inadvertently.  They came to learn that, as a matter of public record, the Developers no longer owned Slip C, but still owned Slip A.  But Plaintiffs told the Developers at closing that they wanted to proceed with the closing and "keep the deed [conveying Slip A to them] as it was."  Accordingly, the Developers executed a deed conveying Lot 1 to Plaintiffs, together with "the exclusive use of Slip A[.]"

¶ 30        There is evidence that after closing, Plaintiffs made use of the inferior Slip C, as Defendants were already making use of Slip A.  However, when Defendants refused to stop parking cars in the Easement, Plaintiffs began protesting that Defendants were using the wrong boat slip.

¶ 31        Plaintiffs brought this action, not only to determine the parties' rights with respect to the Easement, but also for an order declaring them to be the owners of Slip A. The trial court, though, granted summary judgment in favor of Defendants on this issue.  For the reasoning below, we reverse the trial court and conclude that Plaintiffs are entitled to the boat slip which was deeded to them by the Developers.

¶ 32    With the passage of the Connor Act in 1885, our General Assembly made North Carolina a pure race state. N.C. Gen. Stat. § 47-18(a) (2015). Under our pure race recording statute, "[a]s between two purchasers for value of the same interest in land, the one whose deed is first registered acquires title." *Bourne v. Lay & Co.*, 264 N.C. 33, 35, 140 S.E.2d 769, 771 (1965).

¶ 33    There is evidence that there were conversations about the "flipped" boat slips between the attorneys for Plaintiffs and the Developers prior to closing, and that they agreed to "straighten out" the boat slip issue later. When Plaintiffs were closing their purchase of Lot 1 in 2016, they were aware that the Developers had intended to convey Slip A to Defendants the prior year, but there was no deed in the Developers' chain of title to indicate that they had yet parted with Slip A. For their part, Defendants had not filed any litigation—which could have included the filing of a notice of *lis pendens*—to reform their deed from the Developers, something they could have done to protect their interests. *See Hill v. Pinelawn Memorial Park, Inc.*, 304 N.C. 159, 163, 165, 282 S.E.2d 779, 782, 783 (1981) (finding "[i]f [a purchaser] finds no record of [a prior conveyance], even if he knows there has been a prior conveyance, he may record his deed with the assurance that his title will prevail" and "[w]hile actual notice of another unrecorded conveyance does not preclude the status of innocent purchaser for value, actual notice of pending litigation affecting title to the property does preclude such status."); *see also Rollins v. Henry*, 78 N.C. 342, 351

(1878) ("When a person buys property pending an action of which he has notice, actual or presumed, in which the title to it is in issue, from one of the parties to the action, he is bound by the judgment in the action[.]").  Defendants argue that they had no knowledge of the error in the deed before Plaintiffs told them after Plaintiffs' closing; however, they were on constructive notice as the covenants were recorded by the Developers days prior to Defendants' closing and deed recording.

¶ 34      Defendants argue that boat slips, themselves, are not interests in real estate and, therefore, not subject to the Connor Act.  We disagree.  It is true that the land *under* navigable waters in North Carolina—including the land under which Plaintiffs' and Defendants' boats are situated when tied to the dock—belong to the State of North Carolina.  *See Miller v. Coppage*, 261 N.C. 430, 435, 135 S.E.2d 1, 5 (1964).  But an interest in land that abuts navigable water—such as Lots 1 and 2— includes certain littoral or riparian rights to that navigable water.  *See Jones v. Turlington*, 243 N.C. 681, 683, 92 S.E.2d 75, 77 (1956).  These rights may include the right to construct docks, piers, and the like from one's land to access the water which might otherwise interfere with the public's right to use some portion of the navigable water adjacent to the owner's land:

> [A] littoral proprietor and a riparian owner, as is universally conceded, have a *qualified property* in the water frontage belonging, by nature, to their land, the chief advantage growing out of the appurtenant estate in the submerged land being *the right of access* over an extension

of their water fronts to natural water, and the right to construct wharves, piers, or landings, subject to such general rules and regulations as the Legislature . . . may prescribe for the protection of public rights in rivers or navigable waters.

*Capune v. Robbins*, 273 N.C. 581, 588, 160 S.E.2d 881, 886 (1968) (citations and quotation marks omitted).

¶ 35 In the present case, the Developers, prior to conveying Lots 1 and 2, constructed a dock, including three slips from which boats could access the dock, in the exercise of their riparian rights to their land. The Developers then subdivided their land and the rights to access the dock. The Developers conveyed Lot 2 with the right to access the dock at Slip C to Defendants, thereby retaining Lot 1 and the right to access the dock at Slip A. The Developers subsequently conveyed Lot 1, which included the Developers' remaining riparian rights to access the dock at Slip A. As such, we hold that the ownership of each boat slip (which includes the right to access the dock at a certain point) is part of the littoral or riparian rights associated with the Lots and is therefore an interest in land subject to the Connor Act.

¶ 36 Additionally, Defendants argue that the Connor Act does not apply because Plaintiffs did not purchase their rights to Slip A for value. Indeed, the Conner Act protects lien creditors and "purchasers for a valuable consideration." N.C. Gen. Stat. 47-18. However, the record shows that Plaintiffs paid $1.9 million for Lot 2, including use of Slip A. For instance, the deed from the Developers shows revenue stamps

reflecting that this price was paid. The parties conceded this point, and there is nothing to indicate that Slip A was given to them. At the very least, Plaintiffs gave up their "right" to receive Slip C at closing (that they had originally been promised) to receive Slip A, and Slip C has significant value. *King v. McRacken*, 168 N.C. 621, 624, 84 S.E. 1027, 1029 (1915) ("The party assuming to be a purchaser for valuable consideration must prove a fair consideration, not up to the full price, but a price paid which would not cause surprise or make any one exclaim, 'He got the land for nothing!' ").

¶ 37     We are unpersuaded by the Developers' argument which relies on their evidence that Plaintiffs orally promised that they would trade boat slips after their closing, to correct the mistake made when the Developers conveyed the wrong slip to Defendants the year before. The evidence is conflicting. The Developers could have required Plaintiffs to enter some express *written* agreement to make the transfer, but they did not. Defendants could have protected themselves by filing an action against the Developers and then giving notice to the public (including Plaintiffs) of such pending action by recording a notice of *lis pendens* prior to Plaintiffs' purchase of Lot 1/Slip A, ten (10) months later, but they did not. All we have are allegations of verbal representations.

C. Costs and Attorney's Fees[3]

Finally, Plaintiffs appeal the award of costs and attorney's fees to Defendants and the Developers. As we have reversed the trial court's order granting summary judgment in favor of Defendants and the Developers on the issue of the boat slips, we must reverse the trial court's order granting these parties costs and attorney's fees as they are no longer a prevailing party. Further, the trial court awarded attorney's fees under N.C. Gen. Stat. § 6-21.5 finding, *inter alia*, that Plaintiffs "knew, or reasonably should have known, that there was a complete absence of a justiciable issue of either law or fact raised by them in their verified complaint[;]" "[t]here was a complete absence of a justiciable issue by the Plaintiffs in this case[;]" "Plaintiffs' claims in this case were frivolous[;]" and "not supported by a good faith argument for an extension, modification or reversal of existing law." To the extent these are findings of fact and not conclusions of law, they are not supported.

Further, the trial court's conclusions of law that: "Plaintiffs' claims in this case were frivolous[;]" "contained no justiciable issue[;]" "Plaintiffs persisted in litigating this case after the point when they and/or their counsel knew or should have known that their Complaint no longer contained a justiciable issue[]" and "were not

---

[3] The trial court has not entered any order on Plaintiffs' request for attorney's fees in accordance with N.C. Gen. Stat. § 6-21.5 (2015) and nothing in this opinion should be interpreted as a forecast by this Court.

supported by a good faith argument for an extension, modification or reversal of existing law" are not supported by the facts in this case. Nothing in this case or the arguments of counsel for either side can be considered "frivolous" or "not supported by a good faith argument for an extension, modification or reversal of existing law." We reverse the trial court's award of costs and attorney's fees.

## III. Conclusion

¶ 40          This matter concerns a recorded driveway easement and interests in boat slips between next door neighbors who never entered into a contract with each other, but who purchased their lots/slips from a common owner. There is conflicting evidence about what might have been said at various times regarding these instruments, but we must remember:

> There is no other stake for which men will play so desperately. In men and nations there is an insatiable appetite for lands, for the defence or acquisition of which money and even blood sometimes are poured out like water. The evidence of land-title ought to be as sure as human ingenuity can make it. But if left in parol, nothing is more uncertain, whilst the temptations to perjury are proportioned to the magnitude of the interest.

> The infirmity of memory . . . the honest mistakes of witnesses, and the mis-understanding of parties, these are all elements of confusion and discord which ought to be excluded[.]

*Moore v. Small*, 19 Pa. 461, 465 (1852).

¶ 41    Here, regarding the Easement, we affirm in part and reverse in part. Defendants may make reasonable use of the Easement, which may include the parking of cars within the Easement area. Plaintiffs may make use of the Easement that does not interfere with Defendants' rights to the Easement. This use may include, at times, the right to use the Easement for ingress and egress by vehicles.

¶ 42    Regarding the boat slips, we reverse, specifically the portion of the order directing that the deeds conveying Slip A to Plaintiffs and Slip C to Defendants be reformed. We conclude that Plaintiffs' interest in Slip A is superior to Defendants' claim.

¶ 43    Regarding the costs and attorney's fees, we reverse. Defendants are not the prevailing party, such that they are entitled to attorney's fees, and neither party has brought or maintained a frivolous argument.

AFFIRMED IN PART, REVERSED IN PART, MODIFIED IN PART.

Judges MURPHY and WOOD concur.